1  Vernon E. Murray, *pro se*
2  215 North Marengo Avenue, Third Floor
   Pasadena, California 91101-1504
3  (626) 584-9860
4  In pro per

FILED
APR 27 2020
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

5

6

7  **UNITED STATES BANKRUPTCY COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| **In Re:** | CASE NO. 6:20-bk-10583-SC |
| **Aaron Kenneth Anderson and Jane Marie Anderson,** | Chapter 7 |
| **Debtors.** | |
| **Vernon E. Murray in his individual capacity and as the General Partner of The Walnut Plaza, Ltd. and The Walnut Plaza, Ltd.,** | Adversary No.: **Complaint To Determine Dischargeability Of Debt Pursuant To 11 USC § 523(a)(2)(A))** |
| Plaintiffs, | |
| vs. | |
| **Aaron K. Anderson, individually and doing business as Aaron K. Anderson Construction,** | |
| Defendant. | |

24  Plaintiffs Vernon E. Murray, in his individual capacity and as the General

25  Partner of The Walnut Plaza, Ltd., and The Walnut Plaza, Ltd., hereby alleges:

26  **PARTIES**

27  1.  Plaintiff Vernon E. Murray (sometimes referred to as Plaintiff Murray)

28  is the owner of the real property located at 28728 Palisades Drive, Lake Arrowhead,

1
**Complaint To Determine Dischargeability Of Debt**

California (hereafter Arrowhead Property) in the County of San Bernardino. Plaintiff Murray is also the general partner of Plaintiff The Walnut Plaza Ltd. (sometimes referred to as Plaintiff TWP). TWP is a California Limited Partnership.

2.    Defendant and debtor Aaron K. Anderson doing business as Aaron K. Anderson Construction Company (Anderson) has his principal place of business in Lake Arrowhead, California, in the County of San Bernardino.

## JURISDICTION AND VENUE

3.    The within action is a core proceeding brought pursuant to 11 USC § 523(a)(2) to determine the dischargeability of a debt owing from Anderson to Plaintiffs and to except such debt from Anderson's discharge in the above-entitled bankruptcy proceeding now pending before this Court.

4.    Jurisdiction exists under 28 USC § 157(a), (b)(1),(b)(2)(I), § 133(b) and 11 USC § 523(c) and applicable United States District Court of California General Orders.

5.    Venue is proper within the Central District under 28 USC § 1409(a) in that Anderson's bankruptcy proceeding is pending in the Los Angeles Division, Central District of California of the United States Bankruptcy Court.

6.    On January 24, 2020, Anderson filed the Chapter 7 bankruptcy petition which is pending.

## FACTUAL BACKGROUND

7.    On or about July 16, 2012, Plaintiff Murray, on behalf of himself and Plaintiff TWP, entered into a written agreement with Bryant Bergeson (Bergeson) to provide design, inspection and structural engineering services for a 5-story Home  to be constructed on the Arrowhead Property.

8.    On or about April 28, 2016, Anderson entered into a written agreement with Plaintiffs to serve as the general contractor for the construction of the Home pursuant to the plans and specifications of Bergeson dated February 2, 2016 and, through him, his subcontractors and other agents to construct and complete in an

2

**Complaint To Determine Dischargeability Of Debt**

excellent workman-like manner the improvements on the Home as specified by Plaintiff Murray. Anderson further agreed to inspect the construction at each phase of completion and provide written reports to Plaintiffs on the work that was completed, certifying that it was in accordance with the plans and specifications, the best quality of construction practices and all governmental codes. Anderson knew and agreed that his reports and sign offs on the completion of the work were a prerequisite for the payment of the contractors and subcontractors. Anderson undertook these inspections and provided verbal and written reports of the construction and completion of the various phases of the construction to Plaintiffs for which he charged and was paid an hourly rate.

9.    Plaintiffs paid subcontractor Jim Robbins $123,224.16 for work performed based on the inspections and reports of Anderson provided to Plaintiffs under the terms of the agreements between him and Plaintiffs, which reports stated that at each of the agreed upon stages of completion, including the final stage, that the work by Robbins had been completed pursuant to the terms and standards set forth in his subcontract agreement, pursuant to all codes and pursuant to the plans and specifications for the work.

10.    On or about September 12, 2017, a building inspector for the County of San Bernardino Building And Safety Division (Building And Safety) inspected the property with Anderson and Plaintiffs. The inspector found deficiencies in the construction work and issued a Correction Notice. In the Correction Notice issued on September 12, 2017, the inspector required, among other things, that all seismic straps be checked and further noted that there were missing structural hold-downs, identified as Htt5's. He suspended his inspection until all of the structural components required by the permitted plans and Building Codes were properly installed.

11.    Anderson secured from Bergeson a Structural Observation Report Form that falsely and fraudulently certified that there were no deficiencies with the metal

1  straps and HTT5's.  Anderson secured the Report from Bergeson to cover up his

2  false reporting and to induce Plaintiffs to pay Robbins for work that had not been

3  completed.  The Report also perpetrated a fraud on Building And Safety, which

4  signed off on the framing that in fact had not been completed.

5  12.    Plaintiffs filed a complaint in the San Bernardino Superior Court against

6  Anderson and other entitled Murray v. Bergeson, Case No. CIVDS1812545.  A true

7  and correct copy of the First Amended Complaint filed in the state court action is

8  attached hereto as Exhibit A and incorporated herein by reference.

9  **FIRST CAUSE OF ACTION**

10  **(Fraud and Deceit)**

11  **(Against Anderson For The Determination Of Nondischargeability Of Debt**

12  **Incurred Via Fraud, False Pretense, And False Representation Per11 USC §**

13  **523(a)(2)(A))**

14  13.    Plaintiffs hereby incorporate by reference as though fully set forth at

15  length herein each and every allegation contained in paragraphs 1 through 12,

16  inclusive.

17  14.    At numerous times during the construction of the Home on the

18  Arrowhead Property, including specifically on May 18, 2016, June 17, 2016, August

19  12, 2016 and August 26, 2016, Anderson and others represented to Plaintiffs that

20  they had inspected the Home and that Robbins had completed work on the Home

21  required as of those respective dates in accordance with plans and specifications, all

22  governmental codes and the best construction practices.  Anderson knew his

23  representations were false and stated said representations with the intent to induce

24  Plaintiffs to pay Robbins for the work that had not been performed and for work that

25  had been improperly performed.

26  15.    Plaintiffs did not know, until November 2017, that the representations

27  were false.  Plaintiffs justifiably relied on the representations of Anderson, paying

28  Robbins over $123,000.00 for work that in truth had not been completed at all or had

**Complaint To Determine Dischargeability Of Debt**

1  not been completed pursuant to the plans and specifications and was not due to
2  Robbins.

3       16.    Anderson knew that his inspection and reporting of the completion of
4  work was a prerequisite for the issuance of invoices, lien release and payments to
5  Robbins.  Despite that knowledge, Anderson falsely stated Robbins had properly
6  completed his work at the various stages and provided fraudulent inspection reports.

7       17.    During the course of construction, Anderson concealed the fact the
8  Bergeson had improperly designed the Home one foot below the required elevation
9  necessary to prevent water runoff from entering the garage and the Home.  Anderson
10 and Robbins concealed from Plaintiffs the fact that the Home had been constructed
11 with the first floor and the ridge line one foot higher than on the plans and
12 specifications originally approved by Building and Safety.  In late August 2016,
13 Plaintiffs discovered the facts that had been concealed from him as alleged in this
14 paragraph.  Had Plaintiffs been advised of the failure of Bergeson to properly design
15 the Home at the correct elevation before the ridge line was raised and floors adjusted
16 to that ridge line, the plans and specification could have been, among other things,
17 redrawn to avoid the necessity to install radiant heating at a savings of over
18 $90,000.00.

19      18.    As a direct and proximate result of the fraud and concealment by
20 Anderson, Plaintiffs have incurred damages in an amount in excess of $213,000.00.

21      19.    Anderson's conduct, as alleged herein, was done with a conscious
22 disregard of Plaintiffs' rights, and with intent to vex, injure or annoy such as to
23 constitute oppression, fraud, or malice under Civil Code Section 3294.

24      20.    The acts and conduct of Anderson as alleged above including the
25 allegations of the First Amended Complaint constitute grounds to except the debt
26 owed by Anderson from the general bankruptcy discharge under 11 U.S.C.
27 §523(a)(2)(A).  11 U.S.C. §523(a)(2)(A) provides that an individual debtor is not
28 discharged from any debt for money, property, services, or an extension, renewal or

**Complaint To Determine Dischargeability Of Debt**

1  refinancing to the extent obtained by false pretenses, a false representation, or actual
2  fraud.
3  Date:  April **24**, 2020

Vernon E. Murray,
In Pro Per

**Complaint To Determine Dischargeability Of Debt**

COPY

1   James S. Link (State Bar # 94280)
    Counselor & Advocate at Law
2   215 N. Marengo Ave., 3rd Floor
3   Pasadena, CA 91101
    (626) 793-9570
4   (626) 628-1925 (fax)

5   In association with

6
    Vernon E. Murray, Esq., SB No. 44591
7   215 North Marengo Avenue, Third Floor
    Pasadena, California 91101-1504
8   (626) 584-9860

9

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

OCT 0 5 2018

BY _____
     ASHLEE BAYLESS, DEPUTY

10  Attorneys for Plaintiffs Vernon E. Murray, in his individual capacity and as the General Partner of
11  The Walnut Plaza, Ltd., and The Walnut Plaza, Ltd.

12              **Superior Court Of The State Of California**

13                **For The County Of San Bernardino**

14  **Vernon E. Murray in his individual capacity**      CASE NO. CIVDS1812545
    **and as the General Partner of The Walnut**        (Complaint Filed May 22, 2018)
15  **Plaza, Ltd. and The Walnut Plaza, Ltd.,**
                                                          **First Amended Complaint For Compensatory**
16              Plaintiffs,                               **And Punitive Damages; Demand For Trial By**
                                                          **Jury**
17  vs.

18

19  **Bryant Bergeson, individually and doing**
    **business as KADTEC, Mauricio Rodriguez,**
20  **individually and dba M.R. Home Design and**
    **Drafting Service, Jim Robbins, individually**
21  **and doing business as Robbins Construction,**
    **Alec Seaman, individual and doing business as**
22  **Alec Seaman Construction, Aaron K.**
    **Anderson, individually and doing business as**
23  **Aaron K. Anderson Construction and DOES 1**
24  **through 10, inclusive,**

25              Defendants.

26          Plaintiffs Vernon E. Murray, in his individual capacity and as the General Partner of The
27  Walnut Plaza, Ltd., and The Walnut Plaza, Ltd., hereby allege:

28            **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

                                        1
            **COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

Exhibit "A"

1    1.    Plaintiff Vernon E. Murray (sometimes referred to as Plaintiff Murray) is the owner

2    of the real property located at 28728 Palisades Drive, Lake Arrowhead, California (hereafter

3    Arrowhead Property) in the County of San Bernardino.  Plaintiff Murray is also the general partner

4    of Plaintiff The Walnut Plaza Ltd. (sometimes referred to as Plaintiff TWP).  TWP is a California

5    Limited Partnership.

6    2.    Plaintiffs are informed and believe and thereon allege that defendant Bryant

7    Bergeson (Bergeson) is and at all times material herein was a civil engineer duly licensed by the

8    State of California, whose principal place of business is in Twin Peaks, California.  Plaintiffs are

9    further informed and believe and thereon allege that Kadtec is the fictitious business name of

10    defendant Bryant Bergeson.

11    3.    Plaintiffs are informed and believe and thereon allege that defendant Mauricio

12    Rodriguez (Rodriguez) doing business as M.R. Home Design and Drafting Service is a resident of

13    Beaumont, California in the County of Riverside.

14    4.    Plaintiffs are informed and believe and thereon allege that defendant Jim Robbins

15    doing business as Robbins Construction (Robbins) has his principal place of business in Crestline,

16    California, in the County of San Bernardino.  Plaintiffs are informed and believe and thereon allege

17    that Robbins is and all times material herein was a licensed general contractor.

18    5.    Plaintiffs are informed and believe and thereon allege that defendant Alec Seaman

19    doing business as Alec Seaman Construction (Seaman) has his principal place of business in Big

20    Bear Lake, California, in the County of San Bernardino.  Plaintiffs are informed and believe and

21    thereon allege that Seaman is and all times material herein was a licensed general contractor.

22    6.    Plaintiffs are informed and believe and thereon allege that defendant Aaron K.

23    Anderson doing business as Aaron K. Anderson Construction Company (Anderson) has his

24    principal place of business in Lake Arrowhead, California, in the County of San Bernardino.

25    Plaintiffs are informed and believe and thereon allege that Anderson is and all times material

26    herein was a licensed general contractor.

27    7.    Plaintiffs are ignorant of the true names and capacities of Does 1 through 10,

28    inclusive, and therefore sue such Defendants by their fictitious names.  When the true names and

2

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1 | capacities of those Defendants are ascertained, Plaintiffs will amend this complaint pursuant to

2 | Code of Civil Procedure § 474.

3 |       8.     Plaintiffs are informed and believe and thereon allege that each of the Defendants

4 | named herein was, at all times material hereto, the agent, servant and employee of each and every

5 | other Defendant and that all acts, omissions and conduct alleged herein were undertaken pursuant

6 | to the scope of the agency and employment.

7 |       9.     On or about July 16, 2012, Plaintiff Murray, on behalf of himself and Plaintiff TWP,

8 | entered into a written agreement with Bergeson to provide design, inspection and structural

9 | engineering services for a 5-story Home to be constructed on the Arrowhead Property. Bergeson

10 | had represented that he was a structural engineer and that he was highly qualified to provide the

11 | due diligence and professional services required to design and construct the Home on the

12 | Arrowhead Property (hereinafter the Home). The services included the design phase in which

13 | Bergeson and Rodriguez, agreed to explore and create floor plans, elevations, a roof plan and a plot

14 | plan in consultation with Plaintiffs and to obtain all permits and to conduct and obtain all

15 | inspections related to the design and construction of the Home. The services further included a

16 | structural layout phase including the preparation of plans for the layout of roof framing, floor

17 | framing, foundation, sections and structural details. In addition, the contract called for an

18 | engineering phase that was to include but not be limited to structural design, and structural

19 | calculations for the design, compliance with California Title 24 and plans, details and

20 | specifications. The contract also included all due diligence related to the design, construction and

21 | engineering of the Home, including but not limited to surveys, geology reports, geotechnical

22 | reports, topographic surveys and inspections and certifications to the County and the Plaintiffs that

23 | the construction complied with the permitted plans and specifications and all applicable

24 | governmental codes. The fees of Bergeson under the terms of the contract were calculated based

25 | on the square footage of the project, which changed during the course of design and construction,

26 | plus additional hourly and fixed fees.

27 |      10.    In the year 2013, Plaintiffs started construction on the Home designed by Bergeson.

28 | In September 2013, Plaintiff Murray was diagnosed with cancer and given a prognosis that he

3

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1  would probably not survive more than one year. As a result, construction on the Home was

2  stopped. After undergoing chemotherapy, Plaintiff Murray underwent major surgery as part of his

3  cancer treatment. After that surgery, his prognosis improved. After a sufficient time had passed for

4  Plaintiff Murray to be comfortable in the belief that recurrence of the cancer was substantially

5  reduced, he began evaluating whether to restart construction of the Home. That evaluation began in

6  the fourth quarter of 2015. Plaintiff Murray decided to resume construction only if he was able to

7  secure safeguards that those parties responsible for the design and construction of the Home were

8  well qualified and would provide duplicative and cross-checked supervision and inspections during

9  the construction.

10      11.    Bergeson stated to Plaintiff Murray that if he was hired that he would utilize and

11  provide extraordinary care, skill and efforts in supervising the construction and would perform not

12  only the required County inspections but also additional inspections, field visits and supervision

13  during the construction of the Home. Plaintiff Murray believed he could rely on these

14  representations and Bergeson's personal commitment to assure the best quality of work on the

15  Home and that the work would comply with the plans and specifications and all applicable

16  governmental codes. Accordingly, Bergeson was hired for these purposes and agreed to provide

17  and undertook construction review services during the construction to ensure that the General

18  contractor and subcontractors built the structure in accordance with the plans, specifications and

19  details prepared by defendants, and each of them. Bergeson agreed to inspect and approve work

20  during the construction for compliance with the plans and specifications, all codes and best quality

21  construction practices.    Bergeson knew and agreed that his inspections and approvals were a

22  prerequisite for the payment of the contractors and subcontractors and inspections by the County of

23  San Bernardino.

24      12.    Bergeson charged Plaintiffs on a unit pricing basis per square foot; plus, additional

25  fees for the extra work such as the above-referenced inspections.    Plaintiffs paid Bergeson

26  $67,086.56.

27      13.    Plaintiffs entered into a written agreement with Rodriguez for the interior design of

28  the Home and to provide construction drawings for the build out of the structure designed by

4

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1    Bergeson.  Rodriguez further agreed to provide supervision of the construction and to direct and

2    interface with the contractors and subcontractors during construction to interpret and provide

3    assistance for compliance with construction drawings and to manage the construction. Rodriguez

4    was on the job nearly every day during construction providing supervision, as-built plans and

5    working on change orders. Rodriguez further agreed to inspect the construction at each phase and

6    provide written reports to Plaintiffs on the work that was completed certifying that it was in

7    accordance with the plans and specifications, the best quality of construction practices and all

8    governmental codes. Rodriguez knew and agreed that his reports and sign offs on the completion of

9    work were a prerequisite for the payment of the contractors and subcontractors.  Rodriguez

10    undertook those inspections and provided verbal and written reports of the construction and

11    completion of the various phases of the construction for which he charged and was paid an hourly

12    rate.

13        14.    Plaintiffs are informed and believe and thereon allege Rodriguez was also an

14    employee of Bergeson and provided drafting and other services on the Home for said defendant.

15    Rodriguez separately and independently agreed to the work alleged in paragraph 12 pursuant to the

16    contract with Plaintiffs, with the consent of Bergeson.

17        15.    On or about April 28, 2016, Anderson entered into a written agreement with

18    Plaintiffs to serve as the general contractor for the construction of the Home pursuant to the plans

19    and specifications of Bergeson dated February 2, 2016 and, through him, his subcontractors and the

20    employees of owner to construct and complete in an excellent workman-like manner the

21    improvements on the Home as specified by Plaintiff Murray.  Furthermore, Anderson agreed to

22    contract with and supervise all subcontractors and secure and supervise the use of all materials,

23    machinery, equipment, utilities, transportation and other facilities needed to construct the Home.

24    Anderson further agreed to supervise and direct all work using the highest professional skill and

25    attention and to be responsible for the control of the construction methods, techniques, sequences,

26    procedures and recordkeeping and to coordinate all portions of the construction of the Home.

27    Anderson also agreed to be responsible for the acts and omissions of all employees, subcontractors,

28    their agents and employees as well as other persons performing portions of the work on the Home.

5

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1    Anderson also agreed to assist Rodriguez and plaintiff Murray in preparing more detailed plans and

2    specifications than the ones provided by Bergeson.   Anderson further agreed to inspect the

3    construction at each phase and provide written reports to Plaintiffs on the work that was completed,

4    certifying that it was in accordance with the plans and specifications, the best quality of

5    construction practices and all governmental codes. Anderson knew and agreed that his reports and

6    sign offs on the completion of the work were a prerequisite for the payment of the contractors and

7    subcontractors. Anderson undertook these inspections and provided verbal and written reports of

8    the construction and completion of the various phases of the construction for which he charged and

9    was paid an hourly rate.

10    16.    On or about April 28, 2016, Robbins entered into a written subcontract agreement

11    with Anderson, the general contractor for the project at that time.   Plaintiffs are a third-party

12    beneficiary of that contract. Robbins agreed to provide crane, labor, scaffolding and framing

13    pursuant to a proposal dated February 19, 2016 and the contract with Anderson. Said work was to

14    be undertaken pursuant to the plans and specifications prepared by Bergeson and permitted by the

15    County of San Bernardino.   Said plans and specifications were attached to the subcontract

16    agreement and called for the installation of seismic straps and hold-downs, as well as shear walls

17    and other structural materials, which Robbins was obligated to install as part of his work.

18    17.    Plaintiffs paid Robbins $123,224.16 for work performed based on the inspections

19    and reports of Bergeson, Anderson and Rodriguez provided to Plaintiffs under the terms of the

20    agreements between them and Plaintiffs, which reports state that at each of the agreed upon stages

21    of completion, including the final stage, that the work by Robbins had been completed pursuant to

22    the terms and standards set forth in his subcontract agreement, pursuant to all codes and pursuant to

23    the plans and specifications for the work.   In November 2016, Robbins was removed from the

24    project for a failure and refusal to construct the Home in accordance with the plans and

25    specifications, insubordinance and numerous negligent and intentional breaches of contract.

26    18.    On or about January 13, 2017, Plaintiffs entered into a written construction contract

27    with Seaman by which Seaman agreed to repair work that had been improperly completed on the

28    Home, complete the work that had not been completed on the Home and to supervise all work by

6

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

the subcontractors. Pursuant to an agreement with Plaintiffs to inspect the Home and identify all framing work that did not comply with the plans and specifications, applicable code provisions and good construction practices, Seaman conducted comprehensive inspections of the Home and issued a written report Dated January 13, 2017 (hereafter the Seaman Report).The Seamen Report was utilized in part to define the scope of the work for the construction contract entered into with Plaintiffs.  The January 13, 2017 report was supplemented on June 30, 2017. A true and correct copy of the January 13, 2017 report with the June 30, 2017 supplement is attached hereto, designated Exhibit 1 and incorporated herein by reference.  Plaintiffs paid Seaman $3,981.00 for the inspection reports.  Alec Seaman and his family represented to the Plaintiff Murray that they would take on the burden of supervision and inspection of the Home and Arrowhead Property to ensure construction was properly completed in accordance with the Plans and Specifications, the highest quality of construction practices and all code provisions.  Shannon Seaman separately represented to Plaintiff Murray that Alec Seaman could be fully trusted and that his construction company was the best in the region.

19.    On or about September 12, 2017, a building inspector for the County of San Bernardino Building And Safety Division (Building And Safety) inspected the property with Seaman, Anderson and Plaintiffs.  The inspector found deficiencies in the construction work and issued a Correction Notice.  In the Correction Notice issued on September 12, 2017, the inspector required, among other things, that all seismic straps be checked and further noted that there were missing structural hold-downs, identified as Htt5's.  He suspended his inspection until all of the structural components required by the permitted plans and Building Codes were properly installed.

20.    On September 14, 2017, despite the fact that no work had been done on the Home to correct the deficiencies identified in the Correction Notice and that he had not even been to the job site to inspect the actual condition of the Home, Bergeson signed a statement to the County of San Bernardino under penalty of perjury entitled Structural Observation Report Form in response to the September 12, 2017 correction notice of Building And Safety.  Exhibit 2 is a true and correct copy of said Correction Notice.  In the Structural Observation Report Form, Bergeson certified that there were no deficiencies with the metal straps and HTT5's.  Exhibit 3 is a true and correct copy of the

7

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1   Structural Observation Report Form.  As a result of the Structural Observation Report Form, the
2   inspector for Building and Safety signed off on framing and structural components on the
3   Inspection Record for the Home building project and allowed construction to continue that would
4   cover up the deficiencies.

5          21.    Shortly thereafter, Plaintiffs hired independent structural engineers at Simpson
6   Gumpertz & Heger Inc. (Simpson firm) to inspect the Home and provide a full report of any and all
7   issues of faulty design and construction of the structural elements of the Home.

8          22.    In November 2017, Plaintiffs asked Rodriguez to inspect the Home with him. While
9   Rodriguez began the inspection, shortly thereafter he refused to complete it and quit the job.

10         23.    After two inspections of the Home, the Simpson firm issued a preliminary report on
11  December 14, 2017 finding numerous structural deficiencies. A true and correct copy of the
12  December 14 2017 Report, is attached hereto, designated Exhibit 4 and incorporated herein by
13  reference.

14         24.    On or about April 12, 2018, the Contractor Variance Plans and Specifications with
15  corrections were issued by Bergeson and approved by the Simpson Firm.  On April 20, 2018,
16  Bergeson and Kevin Yang and Jim MacDonald of the Simpson Firm met with two general
17  contractors who were bidding on the project and reviewed those plans and specifications.
18  Following that meeting, Bergeson agreed that the April 12, 2018 plans and specifications would be
19  the final contractor variance report and corrective measures for the seismic deficiencies resulting
20  from the contractors not building the Home pursuant to the plans and specifications of Bergeson
21  and permitted by the county Building And Safety Division.

22         25.    Subsequent to the issuance of the preliminary report on the structural condition of
23  the Home on December 14, 2017, the Simpson Firm engaged in an extensive series of inspections
24  of the Home, consultations with defendant Bergeson, consultations with geologists, consultations
25  with geotechnical engineers, interviews of contractors who worked on the Home and other due
26  diligence.  It also issued a series of interim plans and specifications for a seismic retrofit of the
27  Home that it determined was required due to the inadequate and deficient due diligence, design and
28  the inspections of the structural components of the Home by Bergeson.  The Simpson Firm issued

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1    the final set of plans and specifications for the seismic retrofit of the Home (hereafter the Seismic

2    Engineering Fixes) on September 25, 2018.

3        26.    Construction on the plans and specifications alleged in paragraphs 24 and 25 has

4    been conducted under the supervision and approval of Bergeson and the Simpson firm until June

5    11, 2018 and by the Simpson Firm thereafter.

6        27.    A third set of plans and specifications will be issued by the Simpson firm specifying

7    non-seismic construction deficiencies in the Home resulting from the failure of contractors to

8    perform their work in accordance with the plans and specifications and good construction practices.

9                        **First Cause Of Action—Breach Of Contract**

10       28.    Plaintiffs hereby incorporate by reference as though fully set forth at length herein

11   each and every allegation contained in paragraphs 1 through 27, inclusive.

12       29.    Plaintiffs performed all obligations required of them under the terms of the contracts

13   heretofore alleged.

14       30.    Bergeson breached his contract with Plaintiffs by, among other things, failing to

15   properly design the structure of the Home placing it on the Arrowhead Property one foot below

16   where it should have been located to avoid street water runoff into the garage and the living area of

17   the Home. The entry, loft and garage floor had to be located approximately one foot above the

18   County drainage system at the street.  In the middle of the construction of the framing on the Home

19   and without advising Plaintiffs and the building department, and in violation of the express

20   provisions set forth on Sheet T-1 of the permitted plans, Bergeson and Rodriguez, in conjunction

21   with the contractors, raised the ridge line of the Home one foot in an attempt to fix the design error.

22   Among other things, the locations for the entry, loft and garage floor were adjusted along with the

23   raising of the ridge line.

24       31.    Bergeson further breached his contract with Plaintiffs by failing to properly design

25   elements of the structure as set out in the plans and specifications approved on May 21, 2018.

26       32.    Bergeson further breached his contract with Plaintiffs by failing to obtain adequate

27   geology and geotechnical reports and perform proper due diligence to design the Home, to do the

28   structural engineering and to adequately and properly inspect the Home during the course of

9

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1  construction to ensure that the contractors and subcontractors performed all of the work required by

2  the plans and specifications and the Building Codes.

3       33.    Rodriguez breached his contract with Plaintiffs by, among other things:

4  A. Failing to prepare adequate, complete and accurate designs, drawings and details for the

5  construction of the Home;

6  B. Failing to identify, address and prepare solutions and drawings for issues created by the

7  permitted plans in construction of the Home such as changes to floor heights, window

8  heights, window locations;

9  C. Failing to properly document and report construction defects, failure of contractors to

10  follow the permitted plans and specifications, errors and measurements in locations of

11  walls, floors, windows, door openings and other issues;

12  D. Preparing and issuing a series of erroneous, incomplete and in accurate inspection

13  reports for himself, Anderson and other parties certifying and representing the work had

14  been completed in accordance with the requirements and standards set forth in the plans and

15  specifications, governmental codes and contracts with the Plaintiffs and the general

16  contractor. Rodriguez new Plaintiffs were relying on these inspections and related reports

17  and that he had been retained to make certain that the structure was being built on a day-to-

18  day basis and at each stage of construction pursuant to the best construction practices and in

19  strict compliance with the plans and specifications;

20  E. Failing to timely provide designs, plans, details, inspections and reports needed for the

21  construction of the Home;

22  F. Failing to show up timely and leaving before the agreed-upon time and duration of

23  meetings with Plaintiff Murray, the contractors and other parties involved in the

24  construction;

25  G. Failing to organize documents and record his work in any manner that could be stored,

26  identified, retrieved and utilized by himself and other parties;

27  H. Failing to show up for or finish scheduled meetings and inspections, including a job

28  walk with Plaintiff Murray to identify and document each item in the Home that had been

constructed at a variance to the plans and specifications. The first four or five openings checked at the inspection were at material variance to the plans at which point Rodriguez walked off the job site and quit without adequate notice and in violation of his contractual obligations;

I. Failing and refusing to turn over his records and work products for the Home in an indexed, documented, or organized format after he quit despite repeated requests and demands that he do so. What was turned over was mostly unusable by other parties; and

J. Providing false and inaccurate inspection reports for the purpose of assisting contractors to be paid money they were not owed for work that did not comply with the plans, specifications, building codes, good construction practices and other contractual obligations.

34.      Robbins breached the contract between himself and Anderson on which Plaintiffs are third-party beneficiaries by failing to direct, supervise and control the construction of the Home and by, among other things, failing to follow proper construction practices, Building Codes and the plans and specifications of Bergeson, Rodriguez and manufacturers.  Robbins falsely represented that the work was completed and that the work was completed in accordance with the plans and specifications in order to collect monies that were not due him under his contract with Anderson.

35.      Anderson breached the contract with the Plaintiffs by, among others things:

A.  Failing to complete the work on the Home pursuant to the plans and specifications, the Building Codes and good construction practices;

B.  Failing to adequately supervise and direct the work of his workers and subcontractors;

C.  Failing to adequately inspect the work and providing inadequate and false inspection reports to Plaintiffs in order to receive payments for work and that had not been completed, for work that did not comply with the plans and specifications, for work that violated the Building Codes, and for work that materially changed the Home from the plans and specifications;

D.  Failing to inventory, secure and account for building materials; and

E.  Walking off the job without notice prior to its completion.

11

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

36.    Seaman breached the contract with Plaintiffs by, among other things:

A.  Failing to read the plans and specifications;

B.  Failing to complete comprehensive and accurate inspections of the Home;

C.  Issuing materially incomplete and inaccurate inspection reports;

D.  "Covering" work on the Home that did not comply with the plans and specifications, the Building Codes and good construction practices;

E.  Billing for work that had not been done;

F.  Billing for work that did not comply with the plans and specifications;

G.  Failing to adequately supervise and inspect the work that was done on the Home;

H.   Doing work away from the jobsite and refusing Plaintiffs requests and demands to inspect the quality and progress of the work;

I.  Quitting without notice and abandoning the work on the Home before it was completed and "dumping" partially completed and defective work products and materials on the jobsite;

J.   Failing and refusing to complete work and correct deficiencies in the work identified and required by the County building inspector; and

K.  Recommending and requiring Plaintiffs to pay subcontractors for work that had been done in violation of the plans and specifications, building codes and good construction practices.

37.    As a direct and proximate result of the breach of contract by Bergeson, Plaintiffs have been damaged in excess of $1,000,000.00, including but not limited to:

a.    Plaintiffs were required to retain the services of civil and structural engineers to inspect the "as-built" condition of the Home and create reports together with plans and specifications for the completion of the work required by the permitted plans and specifications. The engineers were also required to review structural engineering for the permitted plans and specifications and work with Bergeson to prepare plans and specifications for a retrofit of the seismic engineering of the Home to bring it up to building code and acceptable safe structural engineering standards. The cost to date for this work is approximately $200,000.00 and it is

12

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1   estimated that there will be at least another $50,000.00 incurred for inspection fees, further

2   identification of defective work in non-structural areas and the production of plans and

3   specifications for the corrective work required;

4          b.     The construction of the Home has been delayed for approximately 18

5   months causing the loss of use to Plaintiffs  in excess of $450,000.00, plus approximately

6   $300,000.00 of increased construction costs, the cost of course of construction insurance premiums

7   of $17,000.00 and other expenses and damages;

8          c.     Plaintiffs made disbursements to Robbins Construction in the amount of

9   $123,224.15 in reliance on the reports of Bergeson;

10         d.     Plaintiffs have incurred costs related to the unauthorized and secretive

11   raising of the loft floor and ridgeline of the house of in excess of $50,000.00. Had Plaintiffs been

12   notified of this unauthorized work, among other things, the modifications to the house could have

13   been made in a manner that would have allowed the deletion of the radiant heating system and at a

14   savings of at least $90,000;

15         e.     Plaintiffs will incur further construction costs to complete and correct the

16   seismic and other work not in compliance with the plans and specifications in excess of

17   $250,000.00;

18         f.     Plaintiffs have incurred additional costs of $3,000.00 for the improper design

19   of the elevator pit, $15,000.00 for additional structural support for the fireplaces and $15,000.00

20   for related work to increase the size of the chimney to comply with Building Codes and to

21   accommodate flues and venting of the fire places.

22       38.    As a direct and proximate result of the breach of contract by Rodriguez, Plaintiffs

23   have been damaged in excess of $1,000,000.00, including but not limited to:

24         a.     Plaintiffs were required to retain the services of architects, contractors,

25   designers and draftsmen to verify the "as-built" condition of the Home, compare the "as-built"

26   condition of the permitted plans and specifications and create new plans and corrective work in

27   order to complete the construction of the Home;

28         b.     Plaintiffs were required to retain the services of civil and structural engineers

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1   to inspect the "as-built" condition of the Home and create reports together with plans and

2   specifications for the completion of the work required by the permitted plans and specifications.

3   The engineers were also required to review structural engineering for the permitted plans and

4   specifications and work with Bergeson to prepare plans and specifications for a retrofit of the

5   seismic engineering of the Home to bring it up to building code and acceptable safe structural

6   engineering standards;

7           c.      The construction of the Home has been delayed for approximately 18

8   months causing the loss of use to Plaintiffs in excess of $450,000.00, plus approximately

9   $300,000.00 of increased construction costs and the cost of course of construction insurance

10  premiums of $17,000.00;

11          d.      Plaintiffs have made disbursements to Robbins Construction in the amount

12  of $123,224.15 in reliance on the inspections and reports of Rodriguez;

13          e.      Plaintiffs have been required to re-create the work product in the possession

14  of Rodriguez which he refused to turn over in a reasonable form, including but not limited to a hard

15  copy of the design and work product book at a cost in excess of $50,000.00, not including costs

16  related to delays while the work product was re-created;

17          f.      Plaintiffs have incurred costs related to the unauthorized and secretive

18  raising of the loft floor and ridgeline of the house well in excess of $100,000.00. Had Plaintiffs

19  been notified of this unauthorized work, among other things, the modifications to the house could

20  have been made in a manner that would have allowed the deletion of the radiant heating system

21  and at a savings of at least $90,000; and

22          g.      Plaintiffs will incur further construction costs to complete and correct

23  seismic and other work not in compliance with the plans and specifications in excess of

24  $250,000.00.

25        39.    As a direct and proximate result of the breach of contract by Seaman, Plaintiffs have

26  been damaged in excess of $1,000,000.00 including, but not limited to:

27          a.      Plaintiffs were required to retain the services of civil and structural engineers

28  to inspect the "as-built" condition of the Home and create reports, together with plans and

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

specifications, for the completion of the work required by the permitted plans and specifications. The engineers were also required to review structural engineering for the permitted plans and specifications and work with Bergeson to prepare plans and specifications for a retrofit of the seismic engineering of the Home to bring it up to building code and acceptable safe structural engineering standards. The cost to date for this work is approximately $200,000.00 and it is established that there will be at least another estimated $50,000.00 incurred for inspection fees, further identification of defective work in non-structural areas and the production of plans and specifications for the corrective work required;

b.    The construction of the Home has been delayed for approximately 18 months causing the loss of use to Plaintiffs of approximately $450,000.00, plus approximately $300,000.00 of increased construction costs, the cost of course of construction insurance premiums of $17,000.00 and other expenses and damages;

c.    Plaintiffs will incur further construction costs to complete and correct the seismic and other work not in compliance with the plans and specifications in excess of $250,000.00;

d.    Plaintiffs have incurred costs in excess of $38,623.53 caused by said defendant's failure to manufacture beams in compliance with the approved sample and in his refusal to allow Plaintiffs to inspect the work prior to the completion of the manufacturing process;

e.    Plaintiffs have incurred a fee of $3,981.00 because of the inaccurate inspection report prepared by said defendant;

f.    Plaintiffs have incurred costs to Seaman for defective corrective work on the master bath and bedroom in the amount of $6,000.00, on the elevator in the amount of $11,700.00, on the foyer in the amount of $5,040.00, for structural steel for fireplaces in the amount of $7,500.00, and for blocking and true up work in the amount of $5,000.00. Plaintiffs will incur additional costs to correct defective work in the areas caused by Seaman;

g.    Plaintiffs will incur additional costs for the correction of Seaman's work that is not as of yet fully known in an amount to be proved at the time of trial; and

h.    Plaintiffs have incurred excessive billing for travel time and job site

15
**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1   meetings in excess of $10,000.00.

2       40.    As a direct and proximate result of the breach of contract by Robbins,  Plaintiffs

3   have been damaged in excess of $1,000,000.00 including, but not limited to:

4           a.    Plaintiffs have incurred the cost for the clean up and disposal of debris in the

5   amount of $19,661.25, rejected and incomplete work in the amount of $66,241.07, scaffolding in

6   the   amount of $40,000.00, for the completion of interior walls in the amount of $5,000.00,

7   completion of the stairs in the amount of $1,350.00, for damages related to the purchase, inventory

8   and protection in the amount of $115,000.00, for protection and repair of work in the amount of

9   $8,272.95, for defective work related to the windows and cost for late work in the amount of

10  $34,900.00, for the failure to provide supervision in the amount of $15,000.00, for damages related

11  to raising elevations in the great room, loft and adjacent areas without written approval in an

12  amount in excess of $91,365.00 for a total sum in excess of $396,790.27;

13          b.    Plaintiffs were required to retain the services of contractors, designers and

14  draftsmen to verify the "as-built" condition of the Home, compare the "as-built" condition of the

15  permitted plans and specifications and create new plans and corrective work in order to complete

16  the construction of the Home at the cost of in excess of $250,000.00;

17          c.    Plaintiffs were required to retain the services of civil and structural engineers

18  to inspect the "as-built" condition of the Home and create reports, together with plans and

19  specifications, for the completion of the work required by the permitted plans and specifications.

20  The engineers were also required to review structural engineering for the permitted plans and

21  specifications and work with Bergeson to prepare plans and specifications for a retrofit of the

22  seismic engineering of the Home to bring it up to building code and acceptable safe structural

23  engineering standards. The cost to date for this work is approximately $200,000.00 and it is

24  estimated that there will be at least another $50,000.00 incurred for inspection fees, further

25  identification of defective work in non-structural areas in the production of plans and specifications

26  for the corrective work required;

27          d.    The construction of the Home has been delayed for approximately 18

28  months causing the loss of use to Plaintiffs in excess of $450,000.00, plus approximately

16

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1   $300,000.00 of increased construction costs,  the cost of course of construction insurance

2   premiums of $17,000.00, plus other expenses and damages;

3          e.      Plaintiffs will incur further construction costs to complete and correct the

4   seismic and other work not in compliance with the plans and specifications in excess of

5   $250,000.00.

6          41.     As a direct and proximate result of the breach of contract by Anderson, Plaintiffs

7   have been damaged in excess of $1,000,000.00 including, but not limited to:

8          a.      Plaintiffs were required to retain the services of architects, contractors,

9   designers and draftsmen to verify the "as-built" condition of the Home, compare the "as-built"

10  condition of the permitted plans and specifications and create new plans and corrective work in

11  order to complete the construction of the Home;

12         b.      Plaintiffs were required to retain the services of civil and structural engineers

13  to inspect the "as-built" condition of the Home and create reports together with plans and

14  specifications for the completion of the work required by the permitted plans and specifications.

15  The engineers were also required to review structural engineering for the permitted plans and

16  specifications and work with Bergeson to prepare plans and specifications for a retrofit of the

17  seismic engineering of the Home to bring it up to building code and acceptable safe structural

18  engineering standards;

19         c.      The construction of the Home has been delayed for approximately 18

20  months causing the loss of use to Plaintiffs in excess of $450,000.00, plus approximately

21  $300,000.00 of increased construction costs and the cost of course of construction insurance

22  premiums of $17,000.00;

23         d.      Plaintiffs have made disbursements to Robbins Construction in the amount

24  of $123,224.15 in reliance on the inspection and reports of Anderson;

25         e.      Plaintiffs have incurred costs related to the unauthorized and secretive

26  raising of the loft floor and ridgeline of the house well in excess of $100,000.00. Had Plaintiffs

27  been notified of this unauthorized work, among other things, the modifications to the house could

28  have been made in a manner that would have allowed the deletion of the radiant heating system

17

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

1   and at a savings of at least $90,000;

2         f.    Plaintiffs will incur further construction costs to complete and correct

3   seismic and other work not in compliance with the plans and specifications in excess of

4   $250,000.00.

5       Anderson is additionally liable to plaintiffs for all damages caused by Robbins and other

6   subcontractors including, but not limited to, those damages alleged against Robbins in paragraph

7   40.

8              **Second Cause Of Action—Fraud And Concealment**

9       42.    Plaintiffs hereby incorporate by reference as though fully set forth at length herein

10   each and every allegation contained in paragraphs 1 through 41, inclusive.

11       43.    At numerous times during the construction of the Home on the Arrowhead Property,

12   including specifically on May 18, 2016, June 17, 2016, August 12, 2016 and August 26, 2016,

13   Bergeson, Anderson and Rodriguez falsely represented to Plaintiffs that they had inspected the

14   Home and that Robbins had completed work on the Home required as of those respective dates in

15   accordance with plans and specifications, all governmental codes and the best construction

16   practices.  Rodriguez, Anderson and Bergeson knew their representations were false and stated said

17   representations with the intent to induce Plaintiffs to pay Robbins for the work that had not been

18   performed and for work that had been improperly performed.  Plaintiffs did not know, until

19   November 2017, that the representations were false.  Plaintiffs justifiably relied on the

20   representations of Rodriguez, Anderson and Bergeson, paying Robbins over $123,000.00 for work

21   that in truth had not been completed at all or had not been completed pursuant to the plans and

22   specifications and was not due to Robbins.

23       44.    Rodriguez, Bergeson and Anderson all knew that the inspection and reporting of the

24   completion of work by Rodriguez, Anderson and Bergeson was a prerequisite for the issuance of

25   invoices, lien release and payments to Robbins. Plaintiffs are informed and believe and thereon

26   allege that Rodriguez, Bergeson and Robbins conspired to misrepresent the facts of the completion

27   of work by Robbins to Plaintiffs in order to induce Plaintiffs to pay Robbins.

28       45.    During the course of construction, Rodriguez, Anderson and Bergeson concealed

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

the fact the Bergeson had improperly designed the Home one foot below the required elevation necessary to prevent water runoff from entering the garage and the Home. Rodriguez, Bergeson, Anderson and Robbins concealed from Plaintiffs the fact that the Home had been constructed with the first floor and the ridge line one foot higher than on the plans and specifications originally approved by Building and Safety. In late August 2016, Plaintiffs discovered the facts that had been concealed from him as alleged in this paragraph. Had Plaintiffs been advised of the failure of Bergeson to properly design the Home at the correct elevation before the ridge line was raised and floors adjusted to that ridge line, the plans and specification could have been, among other things, redrawn to avoid the necessity to install radiant heating at a savings of over $90,000.00.

46.    On September 14, 2017, Bergeson signed a statement under penalty of perjury entitled Structural Observation Report Form in response to the September 12, 2017 Correction Notice of Building And Safety certifying that there were no deficiencies with the metal straps and HTT5's. Said representation was false and made by Bergeson to induce Building and Safety to approve the structural components and to induce Plaintiffs to further proceed with construction covering up his negligent and intentional errors and wrongdoings in the design and construction of the Home. As a result of the Structural Observation Report Form, the inspector for Building And Safety signed off on framing and structural components and allowed Plaintiffs to proceed forward with construction.

47.    As a direct and proximate result of the concealment by Bergeson, Anderson, Rodriguez and Robbins, Plaintiffs have incurred damages as heretofore alleged in paragraphs 34, 35 and 37.

48.    By reason of the foregoing intentional misrepresentations and concealment, Plaintiffs are entitled to punitive damages according to proof.

**Third Cause Of Action—Negligence**

49.    Plaintiffs hereby incorporate by reference as though fully set forth at length herein each and every allegation contained in paragraphs 1 through 48, inclusive.

50.    Bergeson breached his duty of care owed to Plaintiffs by, among other things, failing to properly design the structure of the Home placing it on the Arrowhead Property one foot

19
**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

below where it should have been located to avoid street water runoff into the garage and the Home. The garage had to be located one foot above the County drain. Without advising Plaintiffs and the building department, Bergeson, Anderson and Rodriguez in conjunction with the contractors raised the ridge line of the Home one foot in an attempt to fix the design error. The locations for the floors and other material elements of the Home were also adjusted along with the raising of the ridge line.

51.    Bergeson further breached his duty of care owed to Plaintiffs by failing to properly design elements of the structure as set out in the plans and specifications approved on May 21, 2018.

52.    Bergeson further breached his duty of care owed to Plaintiffs by failing to adequately and properly inspect the Home during the course of construction to ensure that the contractors and subcontractors performed all of the work required by the plans and specifications.

53.    Rodriguez breached his duty of care owed to Plaintiffs by, among other things, failing to adequately and properly inspect and supervise the work on the Home during the course of construction to ensure that the contractors and subcontractors performed all of the work required by the plans and specifications. Rodriguez further breached his duty of care owed to Plaintiffs by failing to provide the drawings, plans and specifications in his possession to Plaintiffs when he quit the job in November 2017.

54.    Robbins breached his duty of care owed to Plaintiffs by failing to direct, supervise and control the construction of the Home and by failing to follow the plans and specifications of Bergeson and Rodriguez.

55.    Seaman breached his duty of care owed to Plaintiffs by, among other things, failing to properly undertake and complete the work required by the contract, including the inspection reports, Exhibit 1.

56.    Anderson breached his duty of care owed to Plaintiffs by failing to direct, supervise and control the construction of the Home and by failing to follow the plans and specifications of Bergeson and Rodriguez.

57.    As a direct and proximate result of the negligence of Bergeson, Plaintiffs have incurred damages as heretofore alleged.

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

58.     As a direct and proximate result of the negligence of Rodriguez, Plaintiffs have incurred damages as heretofore alleged.

59.     As a direct and proximate result of the negligence of Seaman, Plaintiffs have incurred damages as heretofore alleged.

60.     As a direct and proximate result of the negligence of Robbins,  Plaintiffs have incurred damages as heretofore alleged.

61.     As a direct and proximate result of the negligence of Anderson, Plaintiffs have incurred damages as heretofore alleged.

WHEREFORE, Plaintiffs pray for judgment against defendants for compensatory damages, punitive damages, costs of suit, attorney fees, and all other and further relief as the court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury.

Date:  October 5, 2018

James S. Link
Counselor & Advocate at Law
In association with
Vernon E. Murray,

By James S. Link
Associated Counsel for Plaintiffs

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES**

**ALEC SEAMAN**
**CONSTRUCTION**

**LIC #891800 / GENERAL B**

P.O. Box 3070
Big Bear Lake, CA 92315

PHONE
(951)206-1743

EMAIL
seamanalec@gmail.com

WEB
alecseamanconstruction.com

DATE
January 13, 2017

TO
Vernon Murray
215 N. Marengo
Pasadena, CA 91101

PROJECT TITLE: 28728 Palisades Dr.
Lake Arrowhead, CA 92352
PROJECT DESCRIPTION: Murray's Residence Framing Repairs and Corrections
PROJECT #: 201612-01
CONTRACTOR: N/A

The following is a proposal concerning the work to be done on the property at 28728 Palisades Dr., Lake Arrowhead, CA 92352. This attachment pertains to all other terms and conditions in contract # 201612-01 with Alec Seaman Construction.

## ATTACHMENT A - DESCRIPTION OF WORK

| ITEM # | DESCRIPTION | ATTACHMENT A REFERENCE |
|---|---|---|
| 1 | Job clean up and organization prior to beginning work | N/A |
| 2 | Decorative corbels: Remove timber locks, counter-sink holes, re-screw timber locks and plug | Pg. 8 (Note A) |
| 3 | Overcut rafters on front entry way need to be fixed | N/A |
| 4 | Install backing throughout entire house: Base blocks, mid-span blocking, fire-blocks, ceiling blocks for backing, backing added for wide trim around windows where necessary for solid trim nailing and backing above all door headers for casement treatments. | See several notes on Pgs. 1-7, 10-25 |
| 5 | Address problems with framing around sunken spa areas on lower and middle floors. | Pg. 2 (Note A) & Pg. 12 (Note C) |
| 6 | Add fur strips to areas where floor joists are sloped for runoff on the upper decks. | Pg. 2 (Note A) & Pg. 12 (Note B) |
| 7 | Frame wall under stairs at lower floor level | Pg. 5 (Note A) |
| 8 | Stud straightening, removal and reinstallation of bad studs | See Page 3, Note C for example |
| 9 | Install backing all around the stair system, landings, etc. | Pg. 7 |
| 10 | Miscellaneous pick up in the framing of job in order to prepare for rough framing combination inspection. | Pg. 10 (Note A), Pg. 11 (Note C), Pg. 14, 16, 22, 23, 24, 25 |
| 11 | Address problem with leak at window in stairwell area | Pg. 15 |
| 12 | Install fur strips on valley rafters to flush up with rafters | Pg. 20 (Note A) |

**Exhibit 1**

## ATTACHMENT A - DESCRIPTION OF WORK

| ITEM # | DESCRIPTION | ATTACHMENT REFERENCE |
|---|---|---|
| 13 | Reframe upper arched window to fit the radius in great room and other arched windows as needed | Pg. 21 (Note B) |
| 14 | Address problem with roof header extruding into the plain of ceiling treatments | Pg. 21 (Note A) |
| 15 | Address framing issue near wine cellar area where there are 3 different ceiling heights | Pg. 17 |
| 16 | Fur up deck joists in areas where deck was framed too low | N/A |
| 17 | Address misc. problems with middle story deck. Install missing decorative mechanical fasteners on post to deck connection in such a way as to also clean up the crooked holes which may require manufacturing of new hardware. | Pg. 8 (Note B) & Pg. 9 |
| 18 | Frame bottom step of stairs wider for grand stair case look | Pg. 6 (Note A) |
| 19 | Address the problems with the elevator shaft framing | Pg. 26-28 |
| **SCOPE OF WORK FOR PROJECT SUPERVISION** | | |
| 1 | Supervise, inspect and oversee subcontractors, check quality of work being performed by sub-contractors and verify whether subcontract work is being completed in accordance with the approved set of plans or the "as-built" specifications and drawings provided by Maricio Rodriguez at Kadtec. | N/A |
| 2 | Oversee all change orders: If any changes need to be made, Alec Seaman Construction shall receive a change order in writing from applicable contractor(s) and no changes shall take place unless/until the owner has approved and signed the change order(s) and a signed copy has been returned to subcontractor. | N/A |
| 3 | Provide proper documentation of any work that is done through 1) digital photography documentation, 2) job camera video documentation (pending cost approval by owner), 3) through written documentation (for future reference) | N/A |

**ALEC SEAMAN**
**CONSTRUCTION**

**LIC #891880 / GENERAL B**

P.O. Box 3070
Big Bear Lake, CA 92315

PHONE
(951)206-1743

EMAIL
seamanalec@gmail.com

WEB
alecseamanconstruction.com

DATE
January 13, 2017

TO
Vernon Murray
215 N. Marengo
Pasadena, CA 91101

PROJECT TITLE: 28728 Palisades Dr.
Lake Arrowhead, CA 92352

PROJECT DESCRIPTION: Murray's Residence Framing Repairs and Corrections

PROJECT #: 201612-01

CONTRACTOR: N/A

The following describes the allowances/estimated man hours for the work to be done on the property at 28728 Palisades Dr., Lake Arrowhead, CA 92352. This attachment pertains to all other terms and conditions in contract # 201612-01 with Alec Seaman Construction.

## ATTACHMENT B - ALLOWANCES

| NUMBER (VALUE ITEM) | DESCRIPTIONS | ESTIMATED MAN HOURS |
|---|---|---|
| 1 | Cleanup + Daily cleanup and job maintenance. **Note:** This does not include the disposal of construction/project waste. | N/A |
| 2 | Repair all decorative corbels | TBD |
| 3 | Repair over-cut rafters on entry | |
| 4 | Install backing throughout house | |
| 5 | Framing around sunken spas | |
| 6 | Fur sloped ceilings | estimate: 240 hrs. |
| 7 | Frame wall under stairwell | |
| 8 | Misc. stud straightening | |
| 9 | Misc. backing around stair system | |
| 10 | Misc. pick-up framing for Combination inspection | |
| 11 | Repair leak | TBD |
| 12 | Fur valley rafters and general roof framing | |
| 13 | Reframe arched windows as needed | |
| 14 | Repair roof header | estimate: 80 hrs. |
| 15 | Ceiling framing near wine cellar | |
| 16 | Fur deck joists | estimate: 120 hrs. |
| 17 | Clean up deck framing problems | |
| 18 | Reframe bottom steps | TBD |
| 19 | Fix/finish elevator shaft framing | estimate: 180 hrs. |
| N/A | Butcher's Block & Building Material Estimate (see attachments below) | $4,375 |

**BUTCHER'S BLOCK & BUILDING MATERIAL**
P. O. BOX 1569
41860 BIG BEAR BLVD.
BIG BEAR LAKE, CA. 92315
PHONE: (909) 866-5761

PAGE NO   1

RETURNS WITHIN 30 DAYS W/ RECEIPTS
ANY OFF STREET DELIVERY AT BUYER'S RISK

| Customer No. | Job No. | Purchase Order No. | Reference | Terms CASH/CHECK/BANKCARD | Clerk 81 | Date 1/ 5/17 | Time 3:20 |
|---|---|---|---|---|---|---|---|

Sold to
**** CASH ****

Ship to
ALEC SEAMAN
VERDMURRY
DECK REPAIR

EXP. DATE:  1/19/17

TERM#555

DOC#  636832
* ESTIMATE *
EST. 636832

TAX :   046 COUNTY TAX BIG BEAR L

| SHIPPED | ORDERED | UM | SKU | DESCRIPTION | SUGG | UNITS | PRICE/PER | EXTENSION |
|---|---|---|---|---|---|---|---|---|
| | 32 | EA | 44280F | DOUG FIR #1 8x8 4X4X20 | | 853.33 | 1.32 /BF | 1,126.40 |
| | 8 | EA | 21320DF | DOUG FIR S4S 2X12X20 | | 320 | .935/BF | 299.20 |
| | 4 | BX | 993848 | TIMBERLOK SCREW 6" 50PC | | 4 | 41.99 /BX | 167.96 |
| | 24 | EA | 280064 | SIKAFLEX 1A LIMESTONE 10.10Z | | 24 | 6.49 /EA | 155.76 |
| | 16 | EA | OUT | GRN TEK SCRAP/DVY 12"(10/CTN) | | 16.00 | 34.00 /EA | 544.00 |
| | 35 | EA | 58812M | HEX CAP MACHINE BOLT 5/8X8 1/2 | | 31.03 | 3.19 /EA | 111.65 |
| | 35 | EA | S8N | HEX NUT 5/8 | | 35 | .50 /EA | 17.50 |
| | | | | ALL EXPOSED | | | | |
| COUNTY TAX BIG BEAR | 2422.47 | | 1E7.74 | | | | | |
| 1%CA LUMBER TAX BB | 2425.60 | | 14.26 | | | | | |

** ESTIMATE ** ESTIMATE ** ESTIMATE ** ESTIMATE **

| TAXABLE | 2422.47 |
|---|---|
| NON-TAXABLE | 0.00 |
| SUBTOTAL | 2422.47 |
| TAX AMOUNT | 202.00 |
| TOTAL AMOUNT | 2624.47 |

X

---

**BUTCHER'S BLOCK & BUILDING MATERIAL**
P. O. BOX 1569
41860 BIG BEAR BLVD.
BIG BEAR LAKE, CA. 92315
PHONE: (909) 866-5761

PAGE NO   1

RETURNS WITHIN 30 DAYS W/ RECEIPTS
ANY OFF STREET DELIVERY AT BUYER'S RISK

| Customer No. | Job No. | Purchase Order No. | Reference | Terms CASH/CHECK/BANKCARD | Clerk 81 | Date 1/ 5/17 | Time 3:30 |
|---|---|---|---|---|---|---|---|

Sold to
**** CASH ****

Ship to
ALEC SEAMAN
VERDMURRY
PICK UP FRAMING LIST

EXP. DATE:  1/19/17

TERM#555

DOC#  636829
* ESTIMATE *
EST. 636829

TAX :   036 COUNTY TAX BIG BEAR L

| SHIPPED | ORDERED | UM | SKU | DESCRIPTION | SUGG | UNITS | PRICE/PER | EXTENSION |
|---|---|---|---|---|---|---|---|---|
| | 50 | EA | 2420DF | DOUG FIR S4S 2X4X20 | | 666.60 | .825/BF | 550.00 |
| | 20 | EA | 2620DF | DOUG FIR S4S 2X6X20 | | 400 | .825/BF | 330.00 |
| | 10 | EA | 46300F | DOUG FIR #1 S4S 4X6X20 | | 400 | 1.32 /BF | 528.00 |
| | 48 | LB | 93PP | POWER PRO DECK SCREW 9 X 3 2/BX | | 48.00 | 5.49 /LB | 263.52 |
| | 1 | EA | NBN168B1G | AIR NAIL 16D SHORT GALV 3-1/4 | | 1 | 62.00 /EA | 62.00 |
| COUNTY TAX BIG BEAR | 733.52 | | 134.35 | | | | | |
| 1%CA LUMBER TAX BB | 408.00 | | 14.08 | | | | | |

** ESTIMATE ** ESTIMATE ** ESTIMATE ** ESTIMATE **

| TAXABLE | 1733.52 |
|---|---|
| NON-TAXABLE | 0.00 |
| SUBTOTAL | 1733.52 |
| TAX AMOUNT | 148.43 |
| TOTAL AMOUNT | 1881.95 |

X   Received by



U.S. Mail  Only: P.O. Box 3070 Big Bear Lake, CA 92315
Physical Business Address: 41656 Big Bear Blvd Big Bear Lake, CA 92315
Email: seamanalec@gmail.com (951)206-1743

## Attachment D: Pictures with Descriptions

### Friday, January 13, 2017

### Project Description:

## Murray's Residence Framing Repairs and Corrections

### Prepared For:

## Vernon Murray

215 N. Marengo
Pasadena, CA 91101

### Project Address:

## 28728 Palisades Dr.
## Lake Arrowhead, CA 92352

| SHEET INDEX | |
|---|---|
| Pg. 1-7 | Lower floor framing |
| Pg. 8-9 | Rear deck framing |
| Pg. 10-15 | Middle floor framing |
| Pg. 16-25 | Main floor framing |
| Pg. 26-28 | Elevator shaft framing |



**NOTE A**
Throughout the entire lower floor backing will need to be installed along the base line for drywall nailing and base moulding installation on every wall, exterior and interior where concrete floor was poured.

**NOTE B**
According to approved structural plans, the posts should have stacked with the MST60 connection attaching to both posts. Joists should have been headed out and hung with Simp. Joist hangers.

**NOTE C**
Poor workmanship to splice structural posts in the wall. Should be a continuous post.

**NOTE D**
Backing will need to be installed across every header for trim detail

**LOWER FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 1



**NOTE A**

Joists headed out under structural post, needs to be addressed. Typically structural posts have continuous bearing by having vertical posts grains running in the same direction, or having a solid 6" joist member, but not by heading out several joists being weakened by the direction of their grain and the short length which they have been cut to. Recommend having engineer give a suggestion for how to address this.



**NOTE B**

Where joists are sloped for upper deck water run-off, joists need to be furred down for future soffit detail.

**LOWER FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 2



**NOTE A**
General stud straightening needs to be done throughout lower floor wall framing

**NOTE B**
Where framing members extrude the plane of wall framing, studs need to be planed in place or furred as needed.

**NOTE C**
Needs general stud straightening

See "NOTE B" above

**General Framing Note**
Fire blocking needs to be installed throughout lower floor at any drop lid, along the midspan of every wall where it is missing on lower floor framing

LOWER FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 3



**NOTE A**

Fire blocks at stair cases cut with 90 degree cuts where they should have been cut to the angle of the staircase intersecting the vertical studs. Not done according to building standards, recommend remove and replace.



**NOTE B**

Missing shear nailing backing. Stacked up blocks where shear transfers is not to the highest levels of building standards.

**LOWER FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 4



**NOTE A**

Opening under staircase needs wall to be framed for storage with a door opening according to architect's "as built" specifications (TBD).

**NOTE B**

It appears that 2" x 10" D.F. members are attached to LVL members. The specifications given by the elevator manufacturer/installer show 2 LVL members, If there is in fact 2 LVL members and one more 2" x 10" D.F. member to fur out because the wall is framed with 2" x 6" material instead of 2" x 4" material, then all the requirements may have been met. Yet, there is probably a reason the mfr. specifies LVL, namely the properties of LVL are better for attaching hardware which would mean that there should not be any D.F. attached as it might weaken the connection. Also, rail backing not installed in the right place (See page 29 for further details).

LOWER FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 5



**NOTE A**

Stair walls need to be modified/cutback at bottom of staircase in order to have a wider bottom step(s). This note applies to each stair case where applicable grand stair case detail applies. Note: Steps do conform to architectural drawings.



**NOTE B**

Framing needs to be cleaned up before drywall can be installed. If not addressed, it will show up in the finished product.

**LOWER FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 6



**NOTE A**

Drywall backing incomplete. Landing to staircase needs a transition piece

**NOTE B**

Drywall backing incomplete and missing in several areas around landing

**NOTE C**

Drywall backing incomplete. Landing to staircase needs backing and short cripple wall to flush out for drywall.

LOWER FLOOR STAIR WELL

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 7





**NOTE A**

Decorative corbels on
exterior of building need
to be cleaned up as they
were never masked for
stucco, and timberlock
lag bolts need to be
removed, the holes need
to be countersunk, re-
lagged, and plugged.

**NOTE B**

Structural deck posts are missing
machine bolts at base where
CB88 anchors posts.

Mechanical fasteners at post to
girder connection missing.  Install
ornamental "T" straps.



DECK FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 8







**NOTE A**

- Lower level and middle level decks are supposed to finish out with the same length measurement according to plan.

**NOTE B**

- Substandard cuts and framing for exposed finished framing, needs to be either recut and brought tighter, or addressed by covering up with decorative metal strapping.

**NOTE C**

- Unfinished, and substandard construction where ornamental "T" brackets were to be installed. Needs to be addressed by fabricating decorative straps that will cover up mis-drilled holes and continue to make a structural connection between post and beam.

**Deck Framing Note**

Lower floor deck joists framed too low, entire deck joist system needs to be furred up

REAR DECKS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 9



**NOTE A**

Where top plates are broken for post to beam connection, plates need to be tied together by mechanical strapping unless approved by engineer.

**NOTE B**

Drywall backing and fire blocking incomplete around landing of middle floor flight of stairs.

**NOTE C**

Throughout the entire middle floor backing will need to be installed along the base line for drywall nailing and base moulding installation on every wall, exterior and interior where concrete floor was poured. Fire blocks at stair cases cut with 90 degree cuts where they should have been cut to the angle of the staircase intersecting the vertical studs. Not done according to building standards, recommend remove and replace.

**NOTE D**

Where walls have been built out to accommodate plumbing, window sills may need plywood or some other backing treatment

**MIDDLE FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 10



**NOTE B**

• Header beam needs fur strips on lower half before drywall can be properly installed

**NOTE A**

• In the elevator shaft framing there are two 2" x 10" D.F. members screwed together. The specifications given by the elevator manufacturer/installer show 2 LVL members. This will need to be corrected unless justification is given for not using LVL boards as per specs. Also, rail backing not installed in the right place (See page 29 for further details).

**NOTE C**

• MST strap missing nails

**MIDDLE FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 11



### NOTE A

Header and cripple wall at entry into bathroom missing. Door opening needs to be framed in to client/owner's specifications since not on plan.



### NOTE B

Where joists are sloped for upper deck water run-off, joists need to be furred down for future soffit detail.

### NOTE C

Joists headed out under structural post, needs to be addressed. Typically structural posts have continuous bearing by having vertical posts grains running in the same direction, or having a solid 6" joist member, but not by heading out several joists being weakened by the direction of their grain and the short length which they have been cut to. Recommend having engineer give a suggestion for how to address this.

MIDDLE FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 12

**NOTE A**

Miscellaneous drywall backing missing, check entire middle floor ceiling for backing



**General Framing Note**

Fire blocking needs to be installed throughout middle floor at any drop lid, along the midspan of every wall where it is missing on floor framing

**NOTE B**



Misc. stud furring and straightening needed.

MIDDLE FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 13



**NOTE A**

Blocks missing where shear transfers, walls already stuccoed. Recommendation: Insulate, make sure that all electrical is in place and then add interior shear panels.



**NOTE B**

This head-out for plumbing needs to be address. Over-spanned joisting.

**MIDDLE FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 14



**NOTE A**

Leak noticed on the day pictures
were taken. It could be because of
a leak on the roof, or it could be a
leak as a result of something
poorly flashed. Recommendation:
Further inspection by licensed
roofer and by those who installed
flashing and lath.



MIDDLE FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 15



**NOTE A**

Missing mechanical connection. Need engineers recommendation for type of connection required to be installed

**NOTE B**

Stud framing in turret area requires fur strips before drywall as needed throughout entire turret framing

---

MAIN FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 16





**NOTE A**

Throughout the entire main floor backing will need to be installed along the base line for drywall nailing and base moulding installation on every wall, exterior and interior where concrete floor was poured.

**General Framing Note**

Fire blocking needs to be installed throughout main floor at any drop lid, along the midspan of every wall where it is missing on framing



**NOTE B**

- Remove unnecessary board along top of wall



**NOTE C**

- Different levels of joist and floor framing.  Some furring may need to be added in order to prepare for coffered ceiling treatments in finish.



**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS:  P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 17



### NOTE A

Single wall construction may not be sufficient. Perhaps it was necessary for ducting. May or may not need to be addressed (TBD).

### NOTE B



In the elevator shaft framing there are two 2" x 10" D.F. members screwed together. The specifications given by the elevator manufacturer/installer show 2 LVL members. This will need to be corrected unless justification is given for not using LVL boards as per specs. Also, rail backing not installed in the right place (See page 29 for further details).

### MAIN FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 18



**NOTE A**

Stacked studs are acceptable under non bearing points but the top standards of construction would have used a solid member



**NOTE B**

Because of the added plumbing wall, corner will not meet up with the valley as it ought to.

**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 19



**NOTE A**

Substandard framing, not to the highest building standards. Framing should have been cut tight, and where shear transfers, solid 3x or 4x members should have been installed.

**NOTE B**

Where rafter cuts extend past the valley rafter, valley rafter needs to be furred down for finished ceiling treatments.



**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 20





**NOTE A**

Roof header should have run perpendicular to rafters as shown on plan (see S-2). Recommend that this either be framed correctly, or planed down so that rafters plain through correctly. New mechanical fasteners will need to be installed on each end.

**NOTE B**

Frame window to match arch.

**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 21



**NOTE A**

- Backing blocks missing on balloon framed walls

**NOTE B**

- Mechanical connection missing on some of the rafters. Recommend Simpson LS70 or engineer's recommendation

MAIN FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 22



**NOTE A**

Substandard
construction on entire
balloon framed wall.

**NOTE B**

Mechanical connection
missing at roof girder

MAIN FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 23



**NOTE A**

Missing mechanical connection here. Recommend Simpson LS70 or engineer's recommendation



**NOTE B**

This entire transition from roof to roof needs to be addressed, either by bringing everything to a point with and arch that is aesthetically pleasing, or by boxing it in such a way that the transition flows well for ceiling treatments.



MAIN FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 24



**NOTE A**

- Turret may need additional backing for ceiling treatments. To be determined.

S • KING
   RAFTERS
   EACH SIDE
   OF DORMER

**NOTE B**

- Substandard construction in the turret framing. Address as needed

MAIN FLOOR FRAMING REPAIRS

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 25

Bottom level of elevator shaft has the existing dimensions of 64" x 57 3/4", which is over sized based upon the required finished pit dimensions (60 1/2" x 54 1/2"). According the owner's desired specifications to have two layers of 5/8" drywall on interior of shaft to insulate for sound barrier, there is enough room. Some additional furring will need to take place to meet the elevator manufacturer's/installer's specifications.

The next level up (middle floor) the existing shaft dimensions shrink down to 61 5/8" x 56", which will only allow for one layer of 5/8" drywall, which does meet the elevator manufacturer's/installer's specifications. The main level and the top level follow this dimension. See Pg. 27 for elevator spec. with double layered drywall.

## PIT CONSTRUCTION DETAIL



**A    Pit Section w/ Details**

**CONTRACTOR**
Contractor to provide a pit. Install reinforcement and concrete as necessary. Pit should meet the following requirements:

1. Pit Depth: 8"
2. Pit Dimensions: 54 ½" x 60 ½"
3. Pit designed and constructed to support an **impact load of 6489 lbs**
4. Pit must be dry, smooth and level. If unable to provide **dry pit**, provide pit drain with backup valve or dry pan drain in pit for sump. (See note below on Sumps in Pit)

NOTES ON SUMPS IN PIT: Drains and Sump Pumps shall comply with the applicable plumbing code, and they shall be provided with a positive means to prevent water, gases and odors from entering the hoistway. The drain must also be provided with either a backup valve preventing the possibility of sewage backup into pit. OR be provided with a dry pan drain for a sump located outside of the hoistway but not within the elevator machine space.

| CALIFORNIA HOME ELEVATOR & STAIR LIFTS | | | |
|---|---|---|---|
| TITLE ELEVATOR SHOPS-PIT CONSTRUCTION DETAIL | | | SCALE NONE |
| DRAWN BY B | ORIGINAL DATE 09/21/2016 | DRAWING NO (4026-6) | REV 0 |
| JOB INFORMATION VERN MURRAY RESIDENCE | | PAGE 4 of 11 | |

**PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS**
**ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352**
**OWNER: VERNON MURRAY**
**ADDRESS: 215 N. MARENGO, PASADENA, CA 91101**
**PREPARED BY: ALEC SEAMAN CONSTRUCTION**
**ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315**



## TYPICAL DOOR LOCATION DETAIL

*: HORIZONTAL RUNNING CLEARANCES
REQUIRED BY ASME A17.1. SECTION 5.5

**Final Elevator Shaft Dimension Requirements**

Manufacturer's requirements for elevator shaft with two layers of 5/8" drywall shown here on this drawing 63" x 57" rough framing

\.\symlogo ( 2 ).jpg

WWW.SYMMETRYELEVATOR.COM
866-785-6203

| | | | | SCALE |
| SINGLE_PL_SH | | | | SCALE |
| QUANTITY: | DESIGN DATE: | DRAWING NO.: | | REV |
| JOB DESCRIPTION: | | | | |

ELEVATOR SHAFT FRAMING

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

**Pg. 27**

**Existing Elevator Shaft Framing**

**See notes on Pg. 26 regarding Existing Elevator Shaft conditions.**
**Elevator shaft requires further inspection and corrections to make sure every specification given by the elevator company is met to the highest level of building standards. See pg. 29 for more about framing requirements.**

## HOISTWAY FRAMING PLAN VIEW



— Ceiling Joists

— EYE BOLT

— Lift Rail Wall

### HOISTING POINT PLACEMENT

## WORK BY OTHERS

A.    CONTRACTOR PROVIDE A HOISTWAY COMPLETE WITH ALL DEMOLITION, ADDITIONAL FRAMING, BRACING AND FRAMING COMPONENTS NECESSARY TO PREPARE THE EXISTING BUILDING TO RECEIVE THE ELEVATOR. PROVIDE PATCHING AS NEEDED FOLLOWING INSTALLATION.

B.    PROVIDE STRUCTURAL HOIST BEAM FOR INSTALLATION OF EQUIPMENT AT TOP OF SHAFT, MAY BE REMOVABLE AFTER INSTALLATION. STRUCTURAL HOIST POINT CENTERED ON RAIL WALL MUST SUPPORT TEMPORARY LOAD OF UP TO 2,000 LBS (SAFETY FACTOR INCLUDED). HOIST POINT LOCATED 12" FROM DOOR MUST SUPPORT TEMPORARY LOAD OF UP TO 5,000 LBS (SAFETY FACTOR INCLUDED).

C.    CONTRACTOR PROVIDE 3'-0" X 9'-9" CLEAR, FINISHED ACCESS HATCH (CABINET-STYLE DOOR & LOCK) AT 10" OF HOISTWAY WITH SPRING CLOSURE OR SELF-CLOSING HINGES, LOCATED 80.5" FROM TOP OF DOOR TO CENTER OF RAIL 1 FOOT TO START CORED.

D.    CONTRACTOR TO PROVIDE ACCESS TO MACHINE SPACE FROM HOISTWAY FOR ELECTRICAL WIRING. CONTRACTOR TO CLOSE IN AFTER ELEVATOR IS INSTALLED.

| CALIFORNIA HOME ELEVATOR & STAIR LIFTS | | |
|---|---|---|
| TITLE | | SCALE |
| PLAN VIEW DESIGN: HOISTWAY FRAMING PLAN VIEW | | NONE |
| DRAWN BY | ORIGINAL DATE | DRAWING NO. | REV |
| | | | |
| JOB INFORMATION | | DATE |
| | | 6 of 11 |

**ELEVATOR SHAFT FRAMING**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

**Pg. 28**

**Existing Elevator Shaft Framing**

## TYPICAL HOISTWAY CONSTRUCTION DETAIL

Existing elevator shaft conditions as shown in pictures do not completely conform to the typical hoist way construction as shown in the manufacturer's/installer's details as shown on this page. Rail backing is also not installed in the correct places.

This shows LVL's not DF timbers.



**TYPICAL HOISTWAY CONSTRUCTION**

**TYPICAL RAIL BACKING DETAIL**

Notice the spacing which is not the existing conditions

| CALIFORNIA HOME ELEVATOR & STAIR LIFTS | | |
|---|---|---|
| TITLE | | SCALE |
| | | PAGE |

7 of 11

**ELEVATOR SHAFT FRAMING**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 29



**ALEC SEAMAN CONSTRUCTION**

U.S. Mail  Only: P.O. Box 3070 Big Bear Lake, CA 92315
Physical Business Address: 41656 Big Bear Blvd Big Bear Lake, CA 92315
Email: seamanalec@gmail.com (951)206-1743

## Pictures of Turret
### Friday, June 30, 2017

### Project Description:

Murray's Residence Framing Repairs and Corrections

### Prepared For:

Vernon Murray

215 N. Marengo
Pasadena, CA 91101

### Project Address:

28728 Palisades Dr.
Lake Arrowhead, CA 92352

| SHEET INDEX | |
|---|---|
| Pg. 1-4 | Turret Framing Pictures w/ notes |
| · | · |
| · | · |
| · | · |



**NOTE A**

• Turret before framing corrections added.

**NOTE B**

• Strings strung from corner to corner where they are supposed the corners are supposed to meet up/plane in.



**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 2



**NOTE A**

This picture shows that the framing doesn't match the points where the proper turret corners should be coming together.



**NOTE B**

Same as Note A

**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315
Pg. 3



**NOTE A**

• Our string lines show the proper center point of turret.

**NOTE B**

• Our string lines compared to the existing turret framing show how much correction is needed.

**MAIN FLOOR FRAMING REPAIRS**

PROJECT: MURRAY'S RESIDENCE FRAMING REPAIRS
ADDRESS: 28728 PALISADES DR., LAKE ARROWHEAD, CA 92352
OWNER: VERNON MURRAY
ADDRESS: 215 N. MARENGO, PASADENA, CA 91101
PREPARED BY: ALEC SEAMAN CONSTRUCTION
ADDRESS: P.O. BOX 3070 BIG BEAR LAKE, CA 92315

Pg. 4



385 N. Arrowhead Ave, First Floor, San Bernardino, CA 92415  |  Phone: 909.387.8311 • Fax: 909.387.3249

*www.SBCounty.gov*



# Land Use Services Department
## Building & Safety Division

# STRUCTURAL OBSERVATION REPORT FORM

*STRUCTURAL OBSERVATION* means the visual observation of the structural system, for general conformance to the approved plans and specifications, at significant construction stages and at completion of the structural system. Structural observation does not include or waive the responsibility for the inspections required by Section 108, 1701 or other sections of the code.

This report includes all construction work through 9/14/17 to 9/14/17          Page No. 1 of 1

| Job Address: 28728 PALISADES LA. | Structural Observer of Record (SOR): BRYANT BERGESON | Phone No. of SOR: 556-6970 |
| Permit No.: B2015 05948 | Structural Observation performed by: BRYANT BERGESON 48805 | Phone No. of Observer: 224-0389 |

## OBSERVED STRUCTURAL ELEMENTS AND THEIR CONNECTIONS

| FOUNDATION | WALL | FRAMES | FLOOR | ELEMENTS/ CONNECTION OBSERVATION LOCATION |
|---|---|---|---|---|
| ○ Footing, Stem Walls | ○ Concrete | ○ Steel Moment Frame | ○ Concrete | METAL STRAPS |
| ○ Mat Foundation | ○ Masonry | ○ Steel Braced Frame | ○ Steel Deck | & HPT5'S |
| ○ Caisson, Piles, Grade, Beams | ⊗ Wood | ○ Concrete Moment Frame | ○ Wood | OK |
| ○ Retaining Foundation Hillside Special Anchors | ⊗ Other: COMBO. | ○ Masonry Wall Fame | ○ Other: | |
| ○ Other: | | ○ Other: | | |

NOTED DEFICIENCIES with the proposed corresponding corrective actions with the respect to general conformance with the approved plans or in the load path: (A final report by the structural observer which states that all observed deficiencies have been resolved is required before acceptance of the work by the building official.)

_____

_____

_____

_____

I DECLARE THAT THE FOLLOWING STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE:

1.    I AM THE ENGINEER OR ARCHITECT RETAINED BY THE OWNER TO BE IN RESPONSIBLE CHARGE FOR THE STRUCTURAL OBSERVATION IN ACCORDANCE WITH THE REQUIREMENTS OF SAN BERNARDINO COUNTY.

2.    I, OR ANOTHER ENGINEER OR ARCHITECT WHO I HAVE DESIGNATED ABOVE IS UNDER MY RESPONSIBLE CHARGE, HAS PERFORMED THE REQUIRED SITE VISITS AT EACH SIGNIFICANT CONSTRUCTION STAGE TO VERIFY IF THE STRUCTURE IS IN GENERAL CONFORMANCE WITH APPROVED PLANS AND SPECIFICATIONS;

3.    ALL NOTED DEFICIENCIES WHICH REMAIN TO BE CORRECTED HAVE BEEN INDICATED ABOVE;

4.    I RECOMMEND THAT ACCEPTANCE OF THE STRUCTURAL SYSTEMS BY SAN BERNARDINO COUNTY BE WITHHELD UNTIL ALL OBSERVED DEFICIENCIES ARE CORRECTED;

_____          _____9/14/17_____

SIGNATURE OF STRUCTURAL OBSERVER          DATE

REGISTERED PROFESSIONAL ENGINEER
BRYANT R. BERGESON
No. C048805
Exp. 09/30/18
CIVIL
STATE OF CALIFORNIA

STAMP OF STRUCTURAL OBSERVER

**Exhibit 3**

**SIMPSON GUMPERTZ & HEGER** ▶

| Engineering of Structures
| and Building Enclosures

14 December 2017

Mr. Vernon Murray
215 North Marengo
Pasadena, CA 91101

Project 178198 –    Structural    Engineering    Consulting    Services,    Murray    Residence,
28728 Palisades Drive, Lake Arrowhead, CA

Dear Mr. Murray:

At your request, Simpson Gumpertz & Heger Inc. (SGH) is providing this letter to summarize our assessment of structural issues related to the design and construction of the Murray Residence in Lake Arrowhead and to provide options going forward to address the aforementioned issues.

On 21 October 2017, Jim McDonald and Steven Shepherd of SGH visited the Murray residence and observed that many structural conditions had not been constructed as specified on the structural drawings. On 18 November 2017, Steven Shepherd visited the house again and met with a framing contractor named Bill to discuss the installation of seismic straps and hold-downs that had not yet been installed per the structural drawings. Our review of the permitted structural drawings revealed further concerns that will also be addressed in this letter.

Our understanding of the structural drawings relies on the following assumptions when reading plan sheets:

- Visible walls represent walls in the story below the labeled floor plan.

- Visible posts represent posts in the story above the labeled floor plan.

- Vertical strap and hold-down call-outs represent straps and hold-downs at the bottom of the wall in the story below the labeled floor plan.

  - The foundation plan is an exception to this assumption; hold-down call-outs shown on the foundation plan represent hold-downs at the bottom of the post of the foundation level. This creates a scenario where the same post has a hold-down call-out on both the foundation plan and an above story plan (see Sheet S-6 in Attachment A).

These assumptions are consistent with observations made during the aforementioned site visits, but SGH requests that the Structural Engineer of Record (SEOR) verify that our understanding of the drawings is accurate.

Structural elements observed during our site visits include shear walls and their connections to supporting elements and supported elements, locations of bearing posts and their load path to the foundation, diaphragm geometry and connections to shear walls, and foundation epoxy doweling and reinforcement layout. We summarize our observations of structural issues below. Each issue is categorized by importance (minor, moderate, or critical) and includes a recommendation for resolving said issue.

**Exhibit 4**

**SIMPSON GUMPERTZ & HEGER INC.**
1150 S. Olive Street, Suite 1600, Los Angeles, CA 90015       main: 213.271.2000   fax: 213.617.0411   **www.sgh.com**

Boston  |  Chicago  |  Houston  |  New York  |  San Francisco  |  Southern California  |  Washington, DC

Mr. Vernon Murray
Project 178198

- 2 -

14 December 2017

## 1.    OBSERVED STRUCTURAL ISSUES

### 1.1    Discontinuous Shear Walls

- A shear wall is considered discontinuous where a shear wall exists at one floor but is not supported by another shear wall directly on the floor below. This condition taken alone does not necessarily constitute an unsafe condition. The condition is considered safe only when the "missing" shear wall is replaced by other elements that can transfer the shear wall loads ultimately to the foundation. This includes the diaphragm to distribute the shear wall shear force and transfer girders or posts to transfer the shear wall overturning forces. We identified six instances of discontinuous shear walls where we could not identify sufficient transfer girders and posts (Attachment A). Among these, five instances occurred with no indication on the permitted drawings specifying a transfer girder or support post. We identified one location where the drawings specify a transfer girder, but we did not observe the transfer girder in the as-built framing (in the field). Our site observations were not comprehensive, and there may potentially be other transfer girders shown on plan but missing in the field.

- Degree of importance: Critical.

### 1.2    Shear Walls Lack Adequate Attachment to the Floor Above

- Detail WD31/D-2 shows Simpson clips providing attachment between shear wall plywood sheathing and the floor joist above for walls parallel to the floor joists. We observed several interior shear walls parallel to floor joists that were installed without ensuring that additional floor joists were in place directly above the wall to facilitate attachment using clips. Without adequate connection to the floor diaphragms, these shear walls cannot serve their purpose in resisting seismic loads.

- Degree of importance: Critical.

### 1.3    Shear Walls are Missing Vertical Straps and Hold-Downs

- During a seismic event, shear walls resist overturning forces. Straps and hold-downs are commonly specified at the ends of shear walls for proper overturning force transfer. We observed two issues at multiple locations for shear wall straps and hold-downs: (1) Straps and hold-downs were not installed per design drawings or visual observation could not verify their installation, and (2) Design drawings did not call out straps and hold-downs at all locations where we expect straps / hold-downs are necessary to resolve overturning forces. Where we could not observe the straps or hold-downs, it is possible that the straps or hold-downs at some locations are concealed, for example, by exterior finishes. However, there are some locations where we were able to verify that no strap had been installed at the shear wall edge. These visually confirmed locations were limited to the underside of discontinuous shear walls, where we were able to confirm the transfer girder below had no straps on either side. A summary of our hold-down survey from the 21 October 2017 site visit is included for reference (Attachment B).

- Degree of importance: Critical.

### 1.4    Floor-to-floor Connection of HSS Fireplace Support is Inadequate for Resisting the Required Tensile Forces

- Fireplaces in the structure are supported by cantilever framing. An HSS post supports the back end of the cantilever and is subjected to tensile forces as a result. The installed

Mr. Vernon Murray                                    - 3 -                              14 December 2017
Project 178198

connection of HSS posts between floors utilizes wood screws, which requires tension forces to pass through wood elements in cross-grain tension. The building code does not allow wood to resist loads in cross-grain tension.

- Degree of severity: Critical.

## 1.5    Footing Reinforcement and Doweling

- We observed an unplaced fireplace support framing footing to have less steel reinforcement laid out than is shown in the design drawings. In addition, there are visible air gaps between epoxy and dowels into previously poured foundations.

- Degree of severity: Moderate.

## 1.6    Deck at Main Floor is not Sheathed per Design Drawings

- We understand the SEOR is aware of this design change. Without plywood sheathing, SGH analyzed the deck using the as-built planking as the diaphragm. Our analysis indicates straight sheathing of the planking may provide adequate design strength and stiffness, if the deck is sufficiently light.

- Degree of severity: Minor.

## 1.7    Posts Supporting Exterior Decks at Rear of House

- SGH performed calculations for the posts supporting the rear decks. Post sizes specified on framing plans do not match post size shown on Elevation Sheet S-10. SGH used post sizes specified on framing plans for calculation purposes. For the post size and unbraced length specified on the design drawings combined with the updated loading from each deck (i.e. granite topping on the Main and Middle floor decks and Trex at the Lower floor deck), SGH has found the specified posts to be satisfactory for design gravity loads. Deck seismic forces are resisted by the wall line facing the lake. Our analysis indicates the deck has sufficient diaphragm capacity to transfer the design seismic force to the wall line.

- Degree of importance: Not applicable.

## 1.8    Depressed Floor Framing at Bar Area

- The floor framing of the depressed floor area relies on a wood ledger between 2x6 floor joists. The floor joists are side nailed into the ends of the ledger blocks (end nailing to ledger blocks). The ledger blocks are in between every other floor joist bay to allow the end nailing into the ledger blocks. The ledger blocks are face nailed to 2x6 padding on the side of plywood that is on the side of a wood beam. It is unclear why the floor joists are not directly supported by the wood beam, and we did not verify the nailing is sufficient to support the design loads.

- Degree of importance: Moderate.

## 1.9    Retaining Walls are Potentially Under-Reinforced

- The retaining wall's reinforcement is under-designed when using CBC default values for soil properties. The geotechnical report for the design does not define lateral loads on basement retaining walls or other retaining walls.

Mr. Vernon Murray                                  - 4 -                        14 December 2017
Project 178198

- Degree of importance: Potentially critical.

## 1.10    Analysis of Northwest Wall Line (facing the Lake)

- We performed an approximate seismic analysis of the series of shear walls on the northwest side of the house facing the lake. There are shear walls at each of the four levels; the wall line is offset out-of-plane at both the main level and middle level. Our analysis also considers proposed changes to the deck composition, with granite topping at the main and middle level decks and TREX composite decking at the lower level deck. We checked capacities of shear walls, straps and hold-downs, and diaphragms for Code compliance against design code seismic loads.

  Our analysis identified potentially non-compliant conditions for the design seismic forces:

  1. Shear walls between the foundation and lower floor, and between the lower floor and middle floor.

  2. Shear wall straps and hold-downs at the foundation level, lower floor, and middle floor.

  3. Diaphragm at the middle floor.

  4. Posts and transfer girders supporting discontinuous shear walls above (posts and beams used to support discontinuous shear walls are required to be designed for overstrength forces per ASCE 7-10 Section 12.3.3.3).

  Additionally, one discontinuous shear wall pier between the middle floor and main floor has no posts or transfer girder to support its overturning force. This issue also occurs in other locations and is addressed in Section 1.1 and 3.1 of this report.

  Our shear wall calculations assume the shear walls are blocked per the shear nailing schedule shown on the structural plans. It is our interpretation of the schedule that shear wall Marks 1, 2a, and 4 do not specify blocking, while shear wall Marks 2b, 3, 5, and 6 specify that blocking is required.

- Degree of importance: Critical.

## 1.11    Special Inspection Requirements for Post-Installed Anchors

- In our review we observed specified holdowns not placed and supplemental framing added connecting to the foundation. Where post-installed anchors have or will be used, the 2013 California Building Code (CBC) requires special inspection for post-installed anchors, as indicated in Table 1705.3.

- Degree of importance: Moderate.

## 1.12    Straps on Roof

- We understand from Mr. Murray that the rooftop steel straps were installed and photographed by a subcontractor after the jurisdiction's framing inspector completed the framing inspection.

- Degree of importance: Moderate

Mr. Vernon Murray                                  - 5 -                              14 December 2017
Project 178198

**1.13    Balcony Posts at Middle Floor is Installed Out-of-plumb**

- We observed the exterior posts spanning from the Middle Floor to the Main Floor to be installed out-of-plumb with the offset at the base. This creates an eccentricity in the gravity load path that will create additional forces and moments on framing members. SGH has considered the effect of these additional forces on the as-built framing and connections and has provided a detail (Attachment C) to address these effects.

- Degree of importance: Critical.

**2.    CONCLUSIONS**

The permitted drawings and the construction in place include a variety of shortcomings that compromise the Code intent for safety. Our approximate analysis of the shear walls on the northwest side indicates the design is potentially non-compliant with respect to Code requirements.

**3.    RECOMMENDATIONS**

To mitigate the concerns identified above, we provide the following recommendations:

**3.1    Discontinuous Shear Walls**

- We recommend the SEOR review the discontinuous shear walls identified in Attachment A and provide a calculation that demonstrates the adequacy of the current shear wall configuration or a recommendation to mitigate the situation if it is found to be inadequate. If mitigation is necessary, we can provide recommendations for cost-effective solutions.

**3.2    Shear Walls Lack Adequate Attachment to the Floor Above**

- We recommend the SEOR resolve the design and construction conditions related to the shear walls with inadequate connection to the floor above. Alternatively, we recommend the diaphragm connection for each interior shear wall parallel to the floor joists be inspected and, where missing, additional floor joists added above walls as described in the Structural Floor Notes Item 6 on Sheets S-3 through S-6. Joists shall be connected to shear walls per Detail WD31/D-2. Where it is impractical to add floor joists, additional framing can be designed to connect the top of the shear wall to the diaphragm.

**3.3    Shear Walls are Missing Vertical Straps and Hold-Downs**

- During a site visit on 18 November 2017, Steven Shepherd of SGH and the framing contractor field-verified the location of straps and hold-downs shown on the design drawings but not currently installed. SGH is available to review the newly installed hardware once the contractor has finished installing the remaining straps and hold-downs. SGH has also prepared a markup highlighting additional locations that appear to require straps or hold-downs (Attachment A). The SEOR shall verify the necessity of these additional straps and hold-downs. Pending SEOR approval, contractor shall install appropriate hardware at the specified additional locations. We recommend the SEOR document, by means other than assertion, the presence of all straps and hold-downs specified on the drawings. For those straps and hold-downs not present, we recommend the SEOR provide a mitigation. The simplest mitigation for already specified straps or hold-downs would be installation of the strap or hold-down per plan, but existing conditions may require altering the installation. Further, we recommend the SEOR review the additional straps and hold-downs that we have identified in Attachment A to resolve overturning forces. For the additional straps or hold-

Mr. Vernon Murray                                    - 6 -                              14 December 2017
Project 178198

downs, we recommend that the SEOR review and either provide a calculation demonstrating the adequacy of the structure without them or revise his drawings to include them.

### 3.4 Floor-to-Floor Connection of HSS Fireplace Support

- Due to the inadequacies of the floor-to-floor connection of HSS fireplace support for resisting the required tensile forces, we recommend the SEOR specify and substantiate by calculation an adequate load path for the fireplace framing support. At a minimum, this would include the wood screws be replaced with thru-bolts that connect the base plate and top plate on either side of the floor-to-floor connection.

### 3.5 Footing Reinforcement and Doweling

- Contractor to verify foundation reinforcement is laid out per design drawings. We recommend pull-testing epoxied dowels with visible air gaps to verify the dowel has reached design strength.

- Degree of severity: Moderate.

### 3.6 Deck at Main Floor is not Sheathed per Design Drawings

- SEOR to verify that the decks without plywood sheathing have sufficient diaphragm strength to drag seismic forces to shear walls. The SEOR should consider specifying diagonal sheathing to increase the deck diaphragm strength and stiffness.

### 3.7 Posts Supporting Exterior Decks at Rear of House have Large Unbraced Length

- We recommend the contractor verify the installed posts match the sizes shown on the framing plans. We also recommend the structural drawings be updated to eliminate this inconsistency.

### 3.8 Depressed Floor Framing at Bar Area

- We recommend the SEOR verify the adequacy of the framing including the nailing of each connection.

### 3.9 Potentially Under-Reinforced Retaining Walls

- SEOR to confirm retaining wall design is sufficient to support design soil loads. If non-default soil properties are used in calculations, SEOR shall substantiate the use of such properties with the geotechnical engineer.

### 3.10 Analysis of Northwest Wall Line (facing the Lake)

- We recommend the SEOR substantiate by calculation the seismic force resisting elements and their respective connections at each level of the northwest wall line for compliance with Code-level seismic forces, including the overstrength factor as required per ASCE 7-10 Section 12.3.3.3.

- SGH requests that the SEOR verify that our interpretation of the schedule, with respect to the shear wall blocking, is accurate.

Mr. Vernon Murray                                    - 7 -                           14 December 2017
Project 178198

### 3.11    Special Inspection Requirements for Post-Installed Anchors

- SEOR to verify post-installed anchors have been installed with special inspection.

### 3.12    Straps on Roof

- We recommend SEOR verify installation of roof straps by non-destructive means.

### 3.13    Posts at Middle Floor is Installed Out-of-plumb

- We recommend the SEOR review our detail and verify it provides an adequate load path for the framing supporting the balcony.  The review should include a decision whether to include the tension strap shown in the detail.

Please let us know if you have any questions or need additional information regarding the issues identified above.

Sincerely yours,

*James McDonald*

James A. McDonald, SE (CA)
Associate Principal
I:\LA\Projects\2017\178198.00-MURY\WP\003r2JAMcDonald-L-178198.00.mkv.docx

**Attachment A**



PRIMARY ROOF FRAMING PLAN
SCALE : 1/4" = 1'0"



SECONDARY ROOF FRAMING PLAN
SCALE : 1/4" = 1'-0"

NOTE: SHEET S-2 IS INCLUDED FOR REFERENCE ONLY. FOR STRAP AND HOLDOWN INFORMATION AT COLUMNS VISIBLE ON S-2, SEE S-1 AND S-3.

S-2



UPPER FLOOR FRAMING PLAN
SCALE : 1/4" = 1'0"

○ = LOCATION WHERE STRAP OR HOLD-DOWN IS RECOMMENDED BY SGH, BUT IS NOT SPECIFIED ON PERMITTED DRAWINGS

● = LOCATION WHERE STRAP OR HOLD-DOWN IS SPECIFIED ON THE PERMITTED DRAWINGS, BUT IS EITHER NOT INSTALLED, INSTALLED IMPROPERLY, OR COULD NOT BE OBSERVED

▬ = OUTLINE OF SHEAR WALL SHOWN ON PLAN ONE LEVEL ABOVE



MAIN FLOOR FRAMING PLAN

○ = LOCATION WHERE STRAP OR HOLD-DOWN IS RECOMMENDED BY SGH, BUT IS NOT SPECIFIED ON PERMITTED DRAWINGS

● = LOCATION WHERE STRAP OR HOLD-DOWN IS SPECIFIED ON THE PERMITTED DRAWINGS, BUT IS EITHER NOT INSTALLED, INSTALLED IMPROPERLY, OR COULD NOT BE OBSERVED

■ = OUTLINE OF SHEAR WALL SHOWN ON PLAN ONE LEVEL ABOVE

NO TRANSFER GIRDER OR POSTS TO SUPPORT SHEAR WALL ABOVE

EXISTENCE OF SHEAR WALL VERIFIED DURING SITE VISIT; WALL NOT SHOWN ON DESIGN DRAWINGS

S-4



MIDDLE FLOOR FRAMING PLAN

NO TRANSFER GIRDER OR POSTS TO SUPPORT SHEAR WALL ABOVE

TRANSFER GIRDER INTENDED TO SUPPORT SHEAR WALL ABOVE WAS NOT INSTALLED PER DESIGN DRAWINGS

THIS AREA APPEARS TO BE SLAB ON GRADE. PLEASE CONFIRM.

○ = LOCATION WHERE STRAP OR HOLD-DOWN IS RECOMMENDED BY SGH, BUT IS NOT SPECIFIED ON PERMITTED DRAWINGS

● = LOCATION WHERE STRAP OR HOLD-DOWN IS SPECIFIED ON THE PERMITTED DRAWINGS, BUT IS EITHER NOT INSTALLED, INSTALLED IMPROPERLY, OR COULD NOT BE OBSERVED

▬ = OUTLINE OF SHEAR WALL SHOWN ON PLAN ONE LEVEL ABOVE



**LOWER FLOOR FRAMING PLAN**
SCALE : 1/4" = 1'-0"

○ = LOCATION WHERE STRAP OR HOLD-DOWN IS RECOMMENDED BY SGH, BUT IS NOT SPECIFIED ON PERMITTED DRAWINGS

● = LOCATION WHERE STRAP OR HOLD-DOWN IS SPECIFIED ON THE PERMITTED DRAWINGS, BUT IS EITHER NOT INSTALLED, INSTALLED IMPROPERLY, OR COULD NOT BE OBSERVED

▬ = OUTLINE OF SHEAR WALL SHOWN ON PLAN ONE LEVEL ABOVE

HOLD-DOWN CALL-OUT INCONSISTENT WITH FOUNDATION PLAN CALL-OUT



FOUNDATION PLAN
SCALE : 1/4" = 1'0"

○ = LOCATION WHERE STRAP OR HOLD-DOWN IS RECOMMENDED BY SGH, BUT IS NOT SPECIFIED
ON PERMITTED DRAWINGS

● = LOCATION WHERE STRAP OR HOLD-DOWN IS SPECIFIED ON THE PERMITTED DRAWINGS, BUT IS
EITHER NOT INSTALLED, INSTALLED IMPROPERLY, OR COULD NOT BE OBSERVED

▬ = OUTLINE OF SHEAR WALL SHOWN ON PLAN ONE LEVEL ABOVE

**Attachment B**



**Attachment C**

**SIMPSON GUMPERTZ & HEGER**

Engineering of Structures
and Building Enclosures

CLIENT _____

SUBJECT _____

SHEET NO. _____  L___

PROJECT NO. _____

DATE _____

BY _____

CHECKED BY _____



EQ  EQ

A          A

SECTION A-A

PADDING TO MATCH (E)
POST  (E) 8×8 POST

A35 CLIP

EQ

MSTC66
W/16d
NAILS &
COVER W/
DECORATIVE
WROUGHT IRON

(E) BALCONY
JOIST

A35 CLIPS
T & B

3½ × PSL BKG
TO MATCH POST WIDTH

(E) 8× BEAM

(E) 8×8 POST

(E) RIM JOIST

A35 CLIP

EQ

SECTION @ BALONY POST

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Vernon E. Murray in his individual capacity and as the General Partner of The Walnut Plaza, Ltd. and The Walnut Plaza, Ltd. | DEFENDANTS<br>Aaron K. Anderson, individually and doing business as Aaron K. Anderson Construction |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Vernon E. Murray<br>In Pro Per<br>215 North Marengo Avenue, Third Floor<br>Pasadena, CA  91101-1504<br>626-584-9860 | ATTORNEYS (If Known)<br>Marjorie M. Johnson, Esq  SBN146540<br>P.O. Box 1149<br>Riverside, CA  92502-1149<br>951-778-9878 |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Debtor provided fraudulent written and verbal inspection reports in his capacity of general contractor for the purpose of inducing Plaintiffs to pay, among other things, over $123,000 to himself and subcontractors for work that had not been completed at all or did not comply with Plans and Specifications.  These actions were fraudulent and false per USC Section 523(a) (2)(A).  Debtor also falsly represented in written and verbal inspection reports that the home was constructed one foot higher than permitted with the County and concealed that fact causing substantial damages.

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 -  Recovery of money/property - § 542 turnover of property
☐ 12 -  Recovery of money/property - § 547 preference
☐ 13 -  Recovery of money/property - § 548 fraudulent transfer
☐ 14 -  Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 -  Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 -  Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 -  Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 -  Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 -  Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☒ 62 -  Dischargeability - § 523(a)(2), false pretenses, false
    representation, actual fraud
☐ 67 -  Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 -  Dischargeability - § 523(a)(5), domestic support
☐ 68 -  Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 -  Dischargeability - § 523(a)(8), student loan
☐ 64 -  Dischargeability - § 523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65 -  Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 -  Injunctive relief - reinstatement of stay
☐ 72 -  Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 -  Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 -  Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 -  Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et.seq.
☐ 02 -  Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $     213,000.00 plus additional damages according to proof |

Other Relief Sought

B1040

B1040 (Page 2) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>Aaron K. Anderson, individually and doing business as Aaron K. Anderson Construction | BANKRUPTCY CASE NO.<br>6:20-bk-10583-SC |
| DISTRICT IN WHICH CASE IS PENDING<br>CALIFORNIA CENTRAL | DIVISIONAL OFFICE<br>RIVERSIDE | NAME OF JUDGE<br>SCOTT C. CLARKSON |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>Vernon E. Murray in his individual capacity and as the General Partner of The Walnut Plaza, Ltd. and The Walnut Plaza, Ltd. | DEFENDANT<br>Aaron K. Anderson, individually and doing business as Aaron K. Anderson Construction | ADVERSARY PROCEEDING NO.<br>CIVDS1812545 |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA | DIVISIONAL OFFICE<br>SAN BERNARDINO | NAME OF JUDGE<br>DAVID COHN |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*Vernon E. Murray*

| DATE<br>04/24/2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>VERNON E. MURRAY |
|---|---|

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040